MOSES STEWART, JR. vs. D. C. RHOADES and Wife, impleaded, etc.

September 5, 1888.

**Homestead—Abandonment—Evidence.**—The testimony in this case examined, and *held* not to justify the finding of the trial court that the first-named defendant had abandoned his homestead right to the premises in question.

**Same.**—Appeal, which is from a part of the judgment only, sustained, and case remanded.

Appeal by defendants D. C. Rhoades and wife from so much of a judgment of the district court for Wadena county, *Sleeper*, J., presiding, as adjudged a lien upon and directed a sale of a certain lot in the village of Verndale.

*James Law*, for appellants.

*Hartshorn & Coppernoll*, for respondent.

COLLINS, J. The plaintiff attempts in this action to recover judgment against the first-named defendant for the value of certain building material sold by him, and used in the construction of a dwelling upon a village lot, and to have the amount thereof declared a lien upon the lot, as provided in chapter 90, Gen. St. 1878. The principal defence is that the premises on which the lien is claimed are exempt under the homestead laws of this state, and therefore not subject to the lien demanded. To that part of the answer asserting the homestead right, the plaintiff, in his reply, admitted such homestead right up to September 23, 1886, at which time he avers defendant's dwelling-house was burned; that he then removed from the lot, and ceased to occupy it until about January 1st, when he returned, and has ever since resided upon it, with his family. This concession is fully sustained by the testimony, from which it further appears that the materials purchased of plaintiff were bought after the fire, for use in rebuilding, and are now a part of the house into which defendant moved upon January 1st.

To determine this appeal it is not essential that we should decide whether the mortgage given to plaintiff upon the premises was exe-

v.39M—13

cuted and delivered, as he claims, to secure other and prior indebtedness of defendant, the balance to be credited him on account of material furnished for rebuilding, or whether it was given, as defendants insist, to first secure payment for the building material, and second, should there be an excess, the amount thereof to stand as security for defendants' general debt; nor is it necessary for us to discuss other questions which seem to have been considered in the court below. Its supplemental finding of fact, that after the fire there was an abandonment of the homestead by defendant D. C. Rhoades, is the only finding upon which its conclusion of law, that plaintiff is entitled to a lien, can rest; and, if such finding is not justified by the testimony, the judgment cannot be sustained.

The homestead right is one of the most valuable conferred upon a citizen. Through its beneficent provisions he is guarantied a home in adversity, a shelter for his family, of which he cannot be deprived without his consent. Not only has the legislature protected his dwelling from legal process, but it has expressly provided that no mortgage or other alienation of the homestead of a married man shall be valid without his wife's signature. From the care that has been taken to provide for, secure, and protect this important right and privilege, it is obvious that no one can be deprived of it without clear and convincing testimony of abandonment,—such, for illustration, as was presented in *Donaldson* v. *Lamprey*, 29 Minn. 18, (11 N. W. Rep. 119,) and *Williams* v. *Moody*, 35 Minn. 280, (28 N. W. Rep. 510;) and it is quite evident that this was the view taken by the court in its consideration of *Robertson* v. *Sullivan*, 31 Minn. 197, (17 N. W. Rep. 336.) The defendant strenuously denies that he ever abandoned his homestead, or that he ever intended to do so. It therefore becomes necessary for us to examine plaintiff's case upon this single question. The testimony bearing upon it is brief, and for that reason we give it *verbatim*. The plaintiff testifies: "I had a conversation on or about the 6th day of October, 1886, with D. C. Rhoades, about furnishing material for the erection of a certain building upon the premises described in the mechanic's lien. That conversation was simply this: He was burned out, and it left him in bad shape, and there was yet a lien back on the lot, and he wanted to

know if there was not some way that I could fix it up and put him up a building. I agreed to furnish the material and money to put up a building, and hold security on the building." Again, upon the rebuttal, he was asked: "State whether you had any conversation with Mr. Rhoades in relation to this property. *Answer.* I did. *Question.* State what it was. *A.* He said unless I would help him put the building up,—unless he could procure the money. It was thought that I could procure a loan on it, but we did not expect to get a loan for the full amount of the building of course; they don't make loans that way. But, if I could help him, he could put it up; if I didn't, he would have to abandon it. *Q. by Mr. Law.* Didn't say he was going to abandon it? *A.* Yes, sir; he did." This language does not indicate either abandonment of the homestead or an intent to abandon. Upon the other hand, it serves to show that the defendant was making every possible effort to rebuild his house, and to promptly reoccupy the premises. If it can be held that his urgent appeal for pecuniary assistance immediately after his dwelling was swept away by fire, his statement that, if aid from the source appealed to was refused, he could not proceed as he wished to do, but must "abandon it,"—can be construed into a voluntary surrender of the exemption, an abandonment of the homestead, a premium will be offered to men situated as unfortunately as was this defendant to be apathetic and indifferent just at the time when they should be active and energetic, —just at that period when every effort should be made to regain that which is lost, to overcome disaster and misfortune. And it makes no difference what construction we place upon the words "abandon it;" whether we hold that he meant to say that he would have to relinquish his scheme of rebuilding, (which is most natural,) or abandon his homestead right. Neither view of what was intended by the defendant when using these words will sustain the finding. His right to the exemption did not depend upon rebuilding; for the owner of a homestead may remove therefrom, and protect himself by filing the notice mentioned in section 9, chapter 68, Gen. St. 1878. And, if he meant that he would have to abandon the homestead, it was a qualified statement made dependent wholly upon his ability to secure a loan. If money could be had, he could erect a new house, and re-

sume his residence upon the lot. If it could not be obtained, he was unable to rebuild.

The appeal, which is from that part of the judgment which adjudged and created a lien upon the premises in question, is therefore sustained, and the case remanded to the court below, with instructions to correct and modify its judgment accordingly.