## JOSEPHINE E. LOCKEY v. JAMES W. LOCKEY and Others.[1]

December 9, 1910.

Nos. 16,828—(101).

**Homestead exemption.**

Under sections 3452 and 3453, R. L. 1905, the homestead exemption is measured by area, and the quantity of land there prescribed may be selected as such, notwithstanding a part thereof may be devoted to purposes othe· than that of the dwelling place of the owner.

**Same — Revised Laws 1905.**

Such was the construction given the statutes prior to 1905, and there was no change in the policy of the law by the revision of that year.

Josephine E. Lockey, widow of Joseph Lockey, deceased, petitioned the probate court for Ramsey county to set apart to her the south one·hundred two feet of lots 1 and 2 and of the east half of lot

[1]Reported in 128 N. W. 833.

3, block 6, Summit Park Addition to St. Paul, as the homestead of her deceased husband and family. A brother and four sisters of deceased objected to setting off to her more than the one house in which Joseph Lockey resided at the time of his death. The facts are stated in the opinion. The objections were overruled, and the four houses mentioned in the opinion, with the land on which they are situated, were set off to her by the probate court. The objectors appealed from the decision of the probate court to the district court for that county where the order was affirmed, Kelly, J. From the judgment of the district court, affirming the order of the probate court, the objectors, James W. Lockey and his sisters, appealed. Affirmed.

*A. G. Briggs,* for appellants.
*Edward P. Sanborn,* for respondents.

BROWN, J.

The facts in this case, as disclosed by the stipulation of facts and the findings of the trial court, are as follows:

Joseph Lockey was in his lifetime the owner of a tract of land within the platted part of the city of St. Paul, facing one hundred feet on Summit avenue and two hundred fifty feet on St. Albans street. He constructed thereon three separate buildings or tenements, one fronting on Summit avenue, one fronting on St. Albans street, and a row of four, separate from the two mentioned, also fronting on St. Albans street. Subsequent to his death, in proceedings for the administration of his estate, the widow selected as the homestead the land upon which the row of four tenements was erected, containing less than the area allowed by law, and the question presented on this appeal is whether the court below was in error in confirming her selection.

The trial court found the following facts, which sufficiently present the question involved. In 1892 Lockey erected upon the land now selected by the widow a building intended for and used as dwellings, all under one roof and all inclosed with a common wall of brick, but divided into four attached tenements, which faced and numbered 21, 23, 25, and 27 St. Albans street. In the most southerly of these

112 M.—33.

tenements, No. 27, Lockey moved with his family in 1897, and made his home there continually until his death in 1909. The three attached tenements, 21, 23, and 25, he rented to tenants for dwellings. It also appears that there is no connection between these several tenements, each being separate and independent of each other, except that they are surrounded by one wall and covered by one roof. It also appears that one chimney constructed in the division walls serves each adjoining tenement. The land selected by Mrs. Lockey, as already stated, embraces this structure, but includes less than the statutory area.

It is quite clear that, under our statutes as they existed prior to the revision of 1905, Mrs. Lockey rightfully could claim the property in question as the homestead, notwithstanding the fact that it is devoted in part to purposes other than a dwelling place. Kelly v. Baker, 10 Minn. 124 (154); Umland v. Holcombe, 26 Minn. 286, 3 N. W. 341; Jacoby v. Parkland Distilling Co., 41 Minn. 227, 43 N. W. 52; National Bank of the Republic v. Banholzer, 69 Minn. 24, 71 N. W. 919.

At the time these decisions were rendered the statutes defined a homestead, so far as applicable to cities and villages, as a tract of land "not exceeding in amount one lot of the original plat or any rearrangement or subdivision of such plat," and it was held in the cases referred to that so long as the tract claimed as a homestead was actually occupied as such, and did not exceed one lot, it was exempt, and that it was immaterial that the property was in part put to other uses. In other words, the homestead was formerly measured by area, and the use thereof not restricted exclusively to residence purposes. So that, unless some substantial change was made in the revision of our statutes in 1905, the former decisions control the case at bar.

It is the contention of appellant that a substantial change was made, indicating an intention on the part of the legislature to depart from the area rule, and to limit the homestead exemption to the dwelling actually occupied, and that, though the quantity of ground is limited to one-third of an acre, if any part thereof be devoted to purposes other than the dwelling place of the owner, and not inci-

dent thereto, the exemption ceases as to the part so used for other pur-
poses.

A careful consideration of the old and new statutes leads to the
conclusion that the legislature did not intend to change the law up-
on this subject. And while the language of the new statute is some-
what different from the old, every indication points to a purpose to
retain the settled policy as declared by the court in the cases referred
to. There is no presumption that a change was intended, and the
revised statute will not be construed as "altering the law, unless
it is clear that such was the intention." Becklin v. Becklin, 99
Minn. 307, 109 N. W. 243; State v. Stroschein, 99 Minn. 248, 109
N. W. 235.

But what seems fairly conclusive upon the subject appears in the
report of the statutory revision commission, [p. 28] where a purpose
to retain the area theory is affirmatively stated. We can do no
better than to quote what the commission then said in connection
with the proposed new statute: "It is hoped that the first two sec-
tions will help to clear up the confusion which now exists concerning
this important subject. So long as the exemption is measured by
area, instead of value, the extent of it should be made certain; where-
as the decisions disclose extreme uncertainty. The original section
(G. S. 1894, § 5521) is involved and indefinite. The proposed re-
statement can at least be understood."

This report, though not conclusive, was before the legislature when
considering the adoption of the new law, and inasmuch as no change
was made by that body in the language of the commission as em-
bodied in the proposed revision, it is fairly clear that the intention
was to enact the statute in the light of the interpretation given it by
the commission. In reference to section 3454, upon which counsel
lay stress as indicating an intention to change the law, the com-
mission reported its purpose as solely to preserve the "rights of both
debtors and creditors under liabilities existing when the revision
takes effect."

We therefore hold that there was no change in the policy of our
homestead law by the revision of 1905, and that the same must be

measured by area, and not by the uses or purposes to which the property may be devoted, other than residence purposes.

Judgment affirmed.