IRENE CYSEWSKI v. PAUL STEINGRABER AND OTHERS.[1]

June 28, 1946.

No. 34,151.

*Gleason, Ward & Orff* and *F. J. O'Brien,* for appellant.

*Charles H. Winter,* for respondent Paul Steingraber.

*Stacker & Stacker* and *George G. Chapin,* for respondent Lydia Steingraber.

THOMAS GALLAGHER, JUSTICE.

Action to have a judgment against defendant Paul Steingraber adjudged a lien on certain of his real property in Ramsey county described as lots 6 and 7, block 3, Homer H. Hoyt's Addition to St. Paul. He answered, asserting said premises were exempt as his homestead under Minn. St. 1941, § 510.02 (Mason St. 1927, § 8337).

The trial court found that said premises were exempt as his homestead and that the judgment, which was docketed on April 28, 1942, in said county, did not constitute a lien thereon. From an order denying plaintiff's motion for a new trial, this appeal is taken.

The two lots in question comprise approximately 22/100 of an acre within the limits of St. Paul—substantially less than the one-third of an acre authorized for homestead purposes in § 510.02 (§ 8337). On lot 6 there is located a small house, which bears the address 437 Frey street. On lot 7 there is situated a four-flat building bearing the address 435 Frey street. A common driveway serves the two structures. Paul Steingraber first acquired the property as a homestead under a contract for deed in 1918. In 1930, he procured fee title by warranty deed and has occupied one or the other of the structures on the premises as a homestead for himself and his family continually since that time except as hereinafter set forth.

On July 18, 1941, Steingraber, then a widower, married defendant Lydia Steingraber. At that time she was the owner of a house at 1557 Roblyn avenue, St. Paul. He was employed by the Rural Electrification Administration in a capacity which required constant travel throughout the state and permitted his return to St. Paul approximately only one day a month. Subsequent to his marriage, for a short time he lived with his wife on her property at 1557 Roblyn avenue, there being no vacancies on his own premises. He intended, however, according to his testimony, to return to his property as soon as space there became available.

In August 1941, plaintiff instituted an action against him for personal injuries. Fearful that if a judgment were obtained therein it might involve his real property, on August 8, 1941, he caused the same to be transferred to his wife. Thereafter, on such days as he was in St. Paul and until April 24, 1942, he went to his wife's premises on Roblyn avenue and stayed with her there. His intention to continue 437 Frey street as his homestead during this period was manifested, however, by the retention there of all his furniture, including a piano, rug, dressers, beds, cot, chiffonier, radio, and most of his clothing and personal effects, and by his frequent requests that his wife move there with him at the first available opportunity.

On or about April 20, 1942, she moved into 437 Frey street with the intention of establishing it as her homestead. On that date, she filed at the St. Paul city assessor's office a notice of homestead occupancy to obtain the lower tax rate thereon as provided in § 273.13, subd. 7 (Mason St. 1941 Supp. § 1993, subd. 7), and on April 24, 1942, upon his return from a business trip, Paul moved into this property with her. On April 27, 1942, he again left on a business trip, but his wife continued there until the middle of September 1942. On April 28, 1942, plaintiff's judgment was docketed in Ramsey county. On May 2, 1942, during Paul's absence Lydia commenced an action for divorce wherein she claimed absolute title to and the right of exclusive possession in the premises here involved. In his answer to her complaint, Paul denied that she was the owner of the premises or entitled to exclusive possession thereof, and alleged that the deed placing title in her name had been given without consideration.

While this litigation was pending and during Paul's estrangement from his wife and his absence from the premises after his departure on April 27, 1942, on May 23, 1942, he filed the statutory claim of homestead provided for under § 510.07 (§ 8342). On May 25, 1942, the district court of Ramsey county authorized him to resume occupancy of a portion of the premises, and shortly thereafter he again moved in. On June 27, 1942, a reconciliation

having taken place between the parties, Lydia caused the Frey street property to be transferred to Paul and herself as joint tenants, the divorce action was dismissed, and the parties resumed their marriage relationship at 437 Frey street.

On October 5, 1942, Paul left St. Paul for Farragut, Idaho, to engage in defense work. Shortly prior thereto, in September, his wife moved back to her property at 1557 Roblyn avenue. Thereafter he worked at Farragut until the latter part of January 1943, when he returned to St. Paul. He then lived for a night or two at 1557 Roblyn, but spent more of his time, according to his testimony, on his own property at 435 Frey street, where he occupied a room with the caretaker and where his furniture, clothing, and personal effects still remained.

On February 1, 1943, he left for Pocatello, Idaho, and worked there and in other western cities until July 3, 1943, when he again returned to St. Paul. At this time he and his wife were again estranged, and he went directly to 435 Frey street, where his furniture, clothing, and personal effects were still located and where he continued to live until May 7, 1944. On April 21, 1944, he commenced action for divorce, therein claiming absolute title to all of his property on Frey street. This action was still pending at the time of the trial herein.

On May 7, 1944, Paul left St. Paul to engage in further defense work at Port Orchard and Bremerton, Washington. He returned on November 13, 1944, and again resumed occupancy of his Frey street property and since that date has lived there continually. He testified that at no time did he intend to abandon the Frey street property as his homestead and that during all of his absences therefrom he always intended to return thereto and continue occupancy thereof as his home.

In substance, plaintiff contends (1) that, since Paul actually occupied only the small house for most of the period in question, under the homestead statute the exemption should be limited thereto and should not extend to the four-flat building on the premises; (2) that on August 8, 1941, at which time title to the

premises was placed in his wife's name, all his homestead rights in the property terminated; and (3) that subsequent to his marriage to Lydia, by his removal from the premises at intervals, some of which were in excess of six months, he clearly evidenced his intention of abandoning the same as homestead property.

■ The law is well settled that if the area of property claimed as a homestead in cities of over 5,000 falls within the one-third of an acre prescribed by § 510.02 (§ 8337) and a portion thereof is actually occupied as a home by the owner, then all of the same and the structures thereon are exempt, regardless of the number or type of rental units thereon or the value thereof. Here, the premises involved comprise 22/100 of an acre, substantially less than the one-third of an acre prescribed by the act.

This interpretation of the present homestead act (Minn. St. 1941, §§ 510.01 to 510.09 [Mason St. 1927, §§ 8336 to 8344]) was first expressed in Lockey v. Lockey, 112 Minn. 512, 128 N. W. 833. There, four separate tenements were enclosed under one roof but were otherwise separate and independent of each other. It was contended that only the tenement actually occupied by the owner was exempt. In denying this claim we stated (112 Minn. 515, 128 N. W. 834):

"A careful consideration of the old and new statutes leads to the conclusion that the legislature did not intend to change the law upon this subject. And while the language of the new statute is somewhat different from the old, every indication points to a purpose to retain the settled policy as declared by the court in the cases referred to. * * *

\* \* \* \* \*

"We therefore hold that there was no change in the policy of our homestead law by the revision of 1905, and that the same must be measured by area, and not by the uses or purposes to which the property may be devoted, other than residence purposes."

See, also, Kelly v. Baker, 10 Minn. 124 (154); Umland v. Holcombe, 26 Minn. 286, 3 N. W. 341; Jacoby v. Parkland Distilling

Co. 41 Minn. 227, 43 N. W. 52; National Bank v. Banholzer, 69 Minn. 24, 71 N. W. 919.

In subsequent cases we have upheld the rule thus expressed. In Stauning v. Crookston Merc. Co. 134 Minn. 478, 159 N. W. 788, we stated:

"Plaintiff is the owner of a lot in the city of Crookston 50 feet in width and 150 feet in length, and has a small dwelling house on the westerly 25 feet thereof which he rents to third parties, and a small store building on the easterly 25 feet thereof at the rear of which he and his family have resided for several years. The only question for decision is whether plaintiff is entitled to hold the entire lot as his homestead or only the easterly 25 feet thereof upon which the building in which he resides is located. This question is settled in plaintiff's favor by the prior decisions of this court. See National Bank of the Republic v. Banholzer, 69 Minn. 24, 71 N. W. 919, and Lockey v. Lockey, 112 Minn. 512, 128 N. W. 833, and the cases cited therein."

In Bacon v. Mirau, 148 Minn. 268, 270, 181 N. W. 579, 580, we expressed this doctrine:

"This rule conserves fully all the rights which the homestead law was intended to protect. The homestead property may be used for various commercial purposes as well as for residence purposes. Rooms or offices may be rented for short periods for profit. Surely such short time letting does not require a formal writing with the signature of both husband and wife."

See, also, Gale v. Hopkins, 165 Minn. 177, 206 N. W. 164; Eberhart v. National Citizens Bank, 172 Minn. 200, 214 N. W. 793.

Under the authorities above cited, it is clear that neither the number nor character of the structures on the premises here involved changed the exempt character thereof as homestead property.

■ It appears equally well settled that the transfer by an owner of exempt property, even though made in the mistaken belief that such transfer is necessary to place it beyond the reach of cred-

itors of the transferor, does not change the exempt character of the premises thus transferred nor subject it to the lien of a judgment which would otherwise not attach thereto as homestead property. As stated in Morrison v. Abbott, 27 Minn. 116, 117, 6 N. W. 455, 456:

"Under our homestead law, (Gen. St. 1878, c. 68, §§ 1, 8,) the land, while owned and held as a homestead by N. G. Abbott, was not 'subject to attachment, levy, or sale upon execution * * *' and the judgment recovered was not 'a lien on such homestead * * *.'
* * *

"Section 8 of the homestead law authorizes him [the owner] to sell and convey it without subjecting it by such sale and conveyance to the claims of creditors. This authority to sell and convey is unlimited. What the purpose or motive of the sale and conveyance are is wholly immaterial. * * * In our opinion, the words 'sell and convey' were used to denote any transfer and conveyance, for such consideration, either nominal or actual, as will support a deed. * * *

\* \* \* \* \*

"From this, our interpretation of the statute, it follows that the court below erred in holding that the conveyance by which the eighty-acre tract in question was transferred to defendant Ellen M. Abbott was fraudulent and void as respects the plaintiffs, (creditors of defendant N. G. Abbott,) and adjudging the plaintiff's judgment to be a lien thereupon, * * *."

See, also, Ferguson v. Kumler, 27 Minn. 156, 161, 6 N. W. 618, 620; Thysell v. McDonald, 134 Minn. 400, 159 N. W. 958, Ann. Cas. 1917C, 1015.

■ We feel that the evidence amply sustains the trial court's finding that Paul Steingraber did not lose or abandon his homestead rights in his property so as to make plaintiff's judgment a lien thereon. As previously indicated, the judgment was not docketed until April 28, 1942. At that time Paul and his wife had actually resumed occupancy of the premises as their homestead. On April 20, 1942, defendant Lydia had filed a homestead

claim for assessment purposes, title then being in her name. Section 510.04 (§ 8339) provides that if a debtor be married the homestead exemption may be vested in either spouse and that it extends to the debts of either or both. Under this statute, even though the original transfer was void, the subsequent resumption of occupancy prior to entry of the judgment restored the homestead status of the property as to the debts of both Paul and Lydia. The law is well settled that the resumption of occupancy as a home gives a new right of exemption as of the date of the resumption. Clark v. Dewey, 71 Minn. 108, 73 N. W. 639; Hall v. Holland, 138 Minn. 403, 165 N. W. 235.

Thereafter, on April 27, 1942, Paul Steingraber left the premises again to travel in connection with his work. The judgment was docketed the following day. While thus absent, on May 2, 1942, his wife commenced divorce proceedings against him. She was then still a resident at 437 Frey street and asked the court to decree that she be the absolute owner of all the Frey street property to the exclusion of Paul. Presumably, not only because of his absence in connection with his work, but also because of the divorce proceedings and his exclusion from his property by virtue thereof, Paul deemed it necessary to comply with § 510.07 (§ 8342), and on May 23, 1942, he filed notice with the register of deeds claiming all of the property on Frey street as his homestead. On May 25, 1942, the district court of Ramsey county made an order in the divorce proceedings permitting him to resume occupancy of a portion of the premises at 437 Frey street, and shortly thereafter he resumed occupancy thereof. A reconciliation followed, the divorce action was dismissed, and both parties thereafter continued living on the premises as husband and wife. On June 27, 1942, title thereto was placed in the names of Paul and Lydia Steingraber as joint tenants.

Section 510.07 (§ 8342) specifically provides that the owner of homestead property may remove therefrom without affecting his exemption if he does not abandon the same as his place of abode. It further provides that if he ceases to occupy such homestead for

more than six consecutive months he shall be deemed to have abandoned it unless within such period he shall file with the register of deeds of the county a notice, properly executed, describing the premises and claiming the same as his homestead. The filing of such a notice continues the exempt status of the property for five years after such filing unless actual intention to abandon the premises as a homestead during said period be established. See, Donaldson v. Lamprey, 29 Minn. 18, 11 N. W. 119; Williams v. Moody, 35 Minn. 280, 28 N. W. 510; Clark v. Dewey, 71 Minn. 108, 73 N. W. 639.

Under this statute, after the filing of the notice on May 23, 1942, Paul was at liberty to absent himself from the premises in connection with his work for periods even in excess of six months, and, in the absence of his intention to abandon his homestead rights, to continue the exempt status of his property. Of course, on the other hand, if it could be established that during his absence he arrived at the intention of abandoning said property as his homestead his exemption rights would cease as of that time regardless of the filing of such notice. Baillif v. Gerhard, 40 Minn. 172, 41 N. W. 1059; Quehl v. Peterson, 47 Minn. 13, 49 N. W. 390; Kramer v. Lamb, 84 Minn. 468, 87 N. W. 1024.

Thus, plaintiff's rights in the premises would depend upon a showing that some time subsequent to April 24, 1942, regardless of the notice, Paul Steingraber had abandoned the premises as his homestead. The trial court found that no such abandonment or intention to abandon was established, and there is ample evidence to sustain such finding. Following the reconciliation, in June 1942, Paul and Lydia continued to occupy the premises until shortly before Paul left St. Paul on October 5, 1942, to engage in defense work at Farragut, Idaho. He returned from Farragut in January 1943, at which time, he testified, he stayed a night or two at his wife's property on Roblyn avenue, but spent the greater portion of his time and residence on his own property at Frey street, where his personal effects were still located. On February 1, 1943, he again left St. Paul for Pocatello, Idaho, to engage in defense

work. Thereafter he did not resume living with his wife. He returned to St. Paul on July 3, 1943, and resumed occupancy of his premises on Frey street, living there alone from July 3, 1943, to May 7, 1944. On April 21, 1944, he commenced action for divorce, claiming the entire Frey street premises as his property.

On May 7, 1944, he again left St. Paul to engage in defense work at Bremerton, Washington, and returned on November 13, 1944, at which time he resumed occupancy of his property on Frey street, where he has since resided. (While his last absence exceeded six months, his original notice of claim of homestead filed on May 23, 1942, preserved the exemption status of his property in the absence of proof of his intention to abandon the same.)

The evidence is clear that at no time throughout this period did he intend to abandon the property as his homestead. He continued to keep his furniture, personal belongings, and clothing there during all of his absences. Upon his return from any of his trips, he immediately returned there and resumed occupancy thereof. His testimony in this respect is supported by that of William Marshall, a tenant on his premises, Peter E. Hogenson, a neighbor at 445 Frey street, and by that of Lydia Steingraber. The only conflict between her testimony and his is that it was her recollection that between January 25, 1943, and February 1, 1943, Paul lived with her in her Roblyn avenue property. However, his testimony is equally positive that during this period he stayed there only one or two nights and spent the major portion of this interval as a resident of the Frey street property, and the trial court believed him on this issue.

At all times he received his mail at the Frey street property and was registered as a voter residing at that address. His testimony was positive that at no time did he intend to abandon the same as his homestead, and that even at the time of his marriage it was his intention to resume occupancy there as soon as a vacancy occurred.

In Jaenicke v. Fountain City Drill Co. 106 Minn. 442, 119 N. W. 60, 61, we stated:

"\* \* \* The homestead statute must be reasonably and liberally construed, \* \* \* and a temporary absence of the owner from his homestead, leaving his house and substantially everything therein to the care of another for him, for the purpose of business or pleasure, not amounting to a change of actual residence, would not constitute a ceasing to occupy his homestead, within the meaning of the statute. Quehl v. Peterson, 47 Minn. 13, 16, 49 N. W. 390; Kramer v. Lamb, 84 Minn. 468, 87 N. W. 1024."

Likewise, we have held that the term "actual occupancy" must receive a reasonable construction; that it does not require constant personal presence; and that a temporary absence enforced by some casualty or for the purposes of business does not constitute a removal or abandonment. Kramer v. Lamb, 84 Minn. 468, 87 N. W. 1024, *supra*.

Since the evidence outlined amply sustains the trial court's finding that Paul did not at any time intend to abandon his homestead, the filing of the notice of homestead claim on May 23, 1942, continued to preserve his homestead rights for the five-year period specified, even though at times he was absent therefrom for a period in excess of six months. In consequence, plaintiff's judgment at no time attached as a lien thereon.

Order affirmed.