**Jerry Jerome JOY, Appellant,**

v.

**COOPERATIVE OIL ASSOCIATION, et al., Defendants,**

**Wolden's Service, B & J Timber Company, Respondents.**

**No. C1–84–677.**

Court of Appeals of Minnesota.

Dec. 31, 1984.

Review Denied March 6, 1985.

Carl C. Drahos, Drahos & Young, Bemidji, for appellant.

Ronald K. Carpenter, Smith, Carpenter & Benshoof, Bemidji, for Wolden's Service.

Thomas L. D'Albani, Cann, Schmidt, Haskell & D'Albani, Bemidji, for B & J Timber Co.

Heard, considered and decided by the court en banc, consisting of POPOVICH, C.J., and PARKER, WOZNIAK, LANSING, FORSBERG, NIERENGARTEN and RANDALL, JJ.

## OPINION

FORSBERG, Judge.

This is an appeal from a judgment declaring that the appellant's property lost its homestead status when he failed to record his intent to retain the property as his homestead, pursuant to Minn.Stat. § 510.07 (1982). We affirm.

## FACTS

On March 26, 1981 the home owned by the appellant and his wife was destroyed by fire. When his insurance claim was denied because of suspected arson, the appellant sued his insurance company and eventually obtained a judgment in his favor. Upon learning of that judgment, several of the appellant's creditors intervened, claiming the insurance proceeds. The trial court, however, determined that the insurance proceeds were exempt from attachment under Minn.Stat. § 550.37, subd. 9 (1980) because the appellant's home had been homestead property at the time of the fire. That determination was not appealed.

In July 1983 the respondent-creditor B & J Timber attempted to execute against the appellant's property, claiming that the property had lost its homestead status when the appellant ceased to occupy the premises for more than six months and failed to file a notice of intent to retain the homestead status as required by Minn.Stat. § 510.07 (1982). The appellant brought this declaratory judgment/quiet title action, claiming that he had never intended to abandon the property, that he had never claimed any other property as his homestead, that he had always intended to rebuild on the property, and that due to the nature of the casualty, he should be exempt from the statutory filing requirement. The trial court determined that appellant's homestead status had nonetheless been lost, and he appealed.

## ISSUE

Is an owner who removes himself from his property for a period in excess of six months due to the destruction of the premises by fire, and who fails to file the requisite notice claiming the premises as his homestead, deemed to have abandoned the property as his homestead?

## ANALYSIS

Minn.Stat. § 510.07 (1982) provides in relevant part:

The owner * * * may remove [from the homestead] without affecting such

[homestead] exemption, if he do not thereby abandon the same as his place of abode. If he shall cease to occupy such homestead for more than six consecutive months *he shall be deemed to have abandoned* the same unless, within such period, he shall file with the county recorder of the county in which it is situated a notice, executed, witnessed, and acknowledged as in the case of a deed, describing the premises and claiming the same as his homestead.

(Emphasis supplied.) This section was the subject of discussion in *First National Bank of Mankato v. Wilson*, 234 Minn. 160, 47 N.W.2d 764 (1951) where the court held:

[T]he conclusion seems inescapable that the legislature intended that any removal from the premises for more than six months should be held, considered, adjudged, construed, or treated as if it were an abandonment unless the one method (filing of notice) specified in the statute for preserving the homestead exemption be followed. *In other words, after the owner has ceased to occupy the premises for six months or more without giving the notice required by statute, the presumption of abandonment becomes conclusive.*

*Wilson*, 234 Minn. at 164, 47 N.W.2d at 767 (emphasis supplied).

The *Wilson* decision was subsequently cited with approval in *Muscala v. Wirtjes*, 310 N.W.2d 696 (Minn.1981), where the court stated:

Section 510.07 is clear. * * * While abandonment of a homestead is ordinarily a question of actual cessation of occupancy plus intent, we have held, as recently as 1951, that the addition of the legislature of the 6-month vacancy rule means that the homestead exemption is lost after 6 months unless the person has filed, no matter what the person's intention. [citing *Wilson* ] * * * The statute provides the method whereby homestead

status may be retained regardless of the reason for the owner's nonoccupancy. A notice must be filed within 6 months. *Id.* at 698.

Despite the above language, the *Muscala* court noted that there is a "limited class of cases" where the six month notice requirement will not be strictly applied. The court cited *Millett v. Pearson*, 143 Minn. 187, 173 N.W. 411 (1919) as indicating that a person in jail should be exempt from the notice requirement. The *Millett* court also cited *Clark v. Dewey*, 71 Minn. 108, 110, 73 N.W. 639, 640 (1898), which stated:

Of course, the term "actual occupancy" must receive a reasonable construction, and is not to be understood as requiring constant personal presence, so as to make a man's residence his prison, or that a temporary absence, enforced by some casualty, or for purposes of business or pleasure would constitute a removal, ceasing to occupy, or an abandonment. *Quehl v. Peterson*, 47 Minn. 13, 49 N.W. 390.

The appellant cites the above language from *Clark* for his argument that he should be exempt from the notice requirement under Minn.Stat. § 510.07 because he had left his homestead as the result of a casualty. However, the *Clark* court continued:

But, even with this reasonable construction there must be actual and continued occupation of and residence upon the premises in order to constitute a homestead, *except so far as occupancy is expressly dispensed with by the statute.*

*Clark*, 71 Minn. at 110, 73 N.W. at 640 (emphasis supplied). The dissent also cites *Clark*, but under the facts of that case notice was given.

Thus, although our supreme court appears to have recognized a few limited exceptions to the statutory six month notice requirement,[1] in most instances the notice *must* be filed within six months or the presumption of abandonment will be con-

---

1. *See also Matter of the Estate of Hoffman*, 354 N.W.2d 581, 583 (Minn.Ct.App.1984), where the court cited *Beigler v. Chamberlin*, 145 Minn.

104, 176 N.W. 49 (1920) as indicating that involuntary commitment to a mental institution is not abandonment under § 510.07.

clusive. Such is the case here. Following the dictates of *Wilson* and *Muscala*, we find that when the appellant ceased to occupy his home for more than six months and failed to file a notice claiming the premises as homestead property, the homestead status of the property was lost. We note *Stewart v. Rhoades*, 39 Minn. 193, 39 N.W. 141 (1888), where a defendant debtor had left his homestead for a period of approximately three months because the property had burned. Intent to abandon was the issue, rather than the six month filing period; however the court did remark:

His right to the [homestead] exemption did not depend upon rebuilding; for the owner of a homestead may remove therefrom, and protect himself by filing the notice mentioned in [predecessor statute to § 510.07].

*Id.* at 195, 39 N.W. at 142. This language supports our determination that the filing requirement is not waived simply because the homeowner's absence is the result of a casualty.

## DECISION

Where the appellant was absent from his property for more than six consecutive months due to destruction of the premises by fire, and where he failed to file a notice claiming the property as his homestead pursuant to Minn.Stat. § 510.07, appellant's homestead exemption was lost.

Affirmed.

WOZNIAK, Judge, dissenting.

I respectfully dissent.

Since 1898 our Supreme Court has carved out exceptions to the rule that requires filing notice within six months of leaving one's homestead. I believe the following rule of law has evolved:

If the removal is for a longer time than six months, filing of notice in accordance with the terms of the statute is the only way the homestead right can be preserved *unless the removal is involuntary and without intent to abandon.*

Homestead rights are valuable rights, and the protecting arm of the law should always be raised to guard them.

### I.

The exception to section 510.07 for involuntary removal from the premises was established nearly 100 years ago:

Of course, the term "actual occupancy" must receive a reasonable construction, and is not to be understood as requiring constant personal presence, so as to make a man's residence his prison, or that a temporary absence, *enforced by some casualty,* or for purposes of business or pleasure would constitute a removal, ceasing to occupy, or an abandonment. *Quehl v. Peterson,* 47 Minn. 13, 49 N.W. 390.

*Clark v. Dewey,* 71 Minn. 108, 110, 73 N.W. 639, 640 (1898) (emphasis added).

*Clark* shows that the statute only operates in the context of a voluntary abandonment of occupancy. The notice requirement is inapplicable in the context of a casualty—an involuntary removal. Involuntary commitment for insanity and imprisonment also are recognized exceptions to the statute. *Beigler v. Chamberlin,* 145 Minn. 104, 176 N.W. 49 (1920); *Millet v. Pearson,* 143 Minn. 187, 173 N.W. 411 (1919).

The present case falls into the *Clark* casualty exception because destruction of the home forced an involuntary abandonment. Therefore notice was not necessary. The majority mistakenly overlooks the well-established voluntary-involuntary distinction. It relies on *First National Bank of Mankato v. Wilson,* 234 Minn. 160, 47 N.W.2d 764 (1951), and *Muscala v. Wirtjes,* 310 N.W.2d 696 (Minn.1981), both of which deal with voluntary abandonment.

Just as *Clark* noted 100 years ago that the statute must be construed liberally, even today homestead rights are considered vital to the owner and to society as a whole:

The law originated in the wise and humane policy of securing to the citizen, against all the misfortunes and uncer-

tainties of life, the benefits of a home, not only in his interest, or if a married man, in the interest of himself and his family alone, but also in the interest of the state, whose welfare and prosperity so largely depend upon the growth and cultivation among its citizens of feelings of personal independence, together with love of country and kindred; sentiments that find their deepest root and best nourishment where the home life is spent and enjoyed. Its main purpose is to exempt from forced sale a homestead; the place made such by choice, residence, use and occupancy of the owner as a home, including as its necessary incidents the dwelling house and its appurtenances, and the land belonging to it.

The policy of the law is to protect the homestead, to preserve the homestead for the family even at the sacrifice of just demands. *In no manner does the statute yield to the demands of equity in favor of third parties.* [Citations omitted.]

9A Dunnell Minn. Digest *Homestead* § 4193 (3d ed. rev. 1977) (emphasis added). The majority unnecessarily undermines the policy of Minnesota's homestead statute.

## II.

Joy was tied up in litigation for two years before he collected his insurance proceeds.

A homeowner cannot rebuild until he receives his insurance proceeds. To allow a creditor, under these circumstances, to lien the land is inequitable and unjust.

Certainly, at a minimum, when lack of occupancy is occasioned by a casualty loss, and, as here, the homestead beneficiary acts diligently to recover money damages from his insurance carrier for the casualty loss, he remains in "constructive occupancy" until the funds have been recovered.

My concerns run beyond Joy's vulnerable situation. I am concerned for our aged and the protection of their rights—particularly when temporarily incapacitated. Imagine the plight of the elderly person who, after a nursing home stay exceeding six months, returns to his homestead, only to find it sold for a creditor's lien. Such vulnerable members of society cannot be held to the notice requirement. A person in jail or in a mental institution (both involuntary) should not be given more rights than someone in failing health who is forced to seek nursing home or other care due to physical problems.

### Conclusion

Joy did not voluntarily abandon his home. A fire destroyed his occupancy, and this obviated the necessity of notice.

He did not file another homestead claim. He was forced to litigate his rights to insurance proceeds.

A fire should not prevent a person from rebuilding his residence on the land. Because of the reasons outlined, the land should not be subject to a creditor's lien because it is contra to the legislative and judicial philosophy of homestead exemption.

LANSING, Judge, dissenting.

I join in the dissent of Judge WOZNIAK.