LIEBERMAN MUSIC CO., Appellant,

v.

Vernon HAGEN, individually and d/b/a Wilder Than Ever, Wilder Than Ever, Inc., Respondents,

and

Fargo National Bank and Trust Company, Respondent.

No. C7–86–2132.

Court of Appeals of Minnesota.

April 21, 1987.

Edward F. Klinger, Gunhus, Grinnell, Klinger, Swenson & Guy, Moorhead, for appellant.

Richard A. Ohlsen, John H. Moosbrugger, Mack, Moosbrugger, Ohlsen, Dvorak & Carter, Grand Forks, N.D., for respondent Hagen.

David S. Maring, Cahill & Maring, P.A., Moorhead, for respondent Fargo Nat. Bank and Trust Co.

Heard, considered and decided by NIERENGARTEN, P.J., and PARKER and FOLEY, JJ.

## OPINION

PARKER, Judge.

This appeal is from an order granting a judgment debtor's motion to vacate and quash a writ of execution and levy of writ of execution issued against his property. The trial court determined that the property was the debtor's homestead and therefore was exempt from a judgment creditor's claims under Minn.Stat. § 510.01 (1984). We affirm.

## FACTS

In 1979 respondent Vernon Hagen purchased a three-bedroom home on 12 acres near Mentor, Minnesota. The Mentor property was the only home or residence that Hagen owned from 1979 until the early 1980's, when he purchased a condominium in Grand Forks, North Dakota. In March 1983 Hagen purchased a home in Arizona in the name of his former wife, Marilyn Hagen, from whom he had been divorced in 1973.

Hagen and his former wife reconciled in 1984, and she moved into his Grand Forks condominium. The Hagens occasionally vacationed together at the Arizona home, but never spent more than six to eight weeks a year there.

In late 1985 Hagen's son abandoned a furniture business in East Grand Forks, Minnesota. Since then, Hagen and his former wife have operated the store and, as a result, Hagen has spent more time living at the Grand Forks condominium than previously. He testified that even now he lives in North Dakota only about 20 percent of the time, however, and that he lives in the Mentor home the rest of the time, aside from the trips to Arizona. He testified that he uses the Mentor property year-round and that he has always intended the Mentor property to be his permanent residence.

Hagen has a Minnesota driver's license and has always filed Minnesota state income tax returns. His daughter was eligible for in-state tuition rates at a Minnesota state college. He testified that when he voted, he voted in Minnesota, except in 1984.

When filling out business documents, Hagen has used both his Mentor and Grand Forks addresses. He either used a Grand Forks address or characterized himself as a Grand Forks resident on a 1982 mortgage, a 1984 quit-claim deed, certificates of title to two vehicles, a 1982 security agreement, a financing statement filed on behalf of Wilder Than Ever Amusement Company, a 1984 amendment to a secured credit agreement, a 1985 promissory note, and various bank records. He also listed his Grand Forks condominium as his homestead on personal financial statements that he filed in 1982, 1983 and 1984.

Hagen listed Mentor, Minnesota, as his "present home address" on his state and federal income tax returns for 1982, 1983 and 1984, and as his "residence" on a 1985 certificate of eligibility for health insurance.

On February 5, 1986, appellant Lieberman Music Company obtained a judgment for $725,000 against Hagen. The trial court issued a writ of execution to Lieberman, and a levy was directed against Hagen's Mentor property. On June 24, 1986, Hagen filed a "Notice of Exempt Homestead" on that property with the Polk County Recorder.

Claiming that the Mentor property was his homestead and therefore was exempt from creditors' claims under Minn.Stat. § 510.01 (1986), Hagen moved to vacate and quash the writ of execution and the levy. The trial court granted Hagen's motion, and Lieberman now appeals from the judgment.

## ISSUE

Did the trial court clearly err in ruling that Hagen's property near Mentor, Minnesota, was his homestead within Minn.Stat. § 510.01?

## DISCUSSION

The findings of a trial court sitting without a jury will not be set aside unless they are clearly erroneous. Minn.R.Civ.P.

52.01; *Murphy v. Country House, Inc.,* 349 N.W.2d 289, 293 (Minn.Ct.App.1984). A reviewing court should not substitute its judgment for that of the trial court. *Blixt v. Civil Service Board,* 297 Minn. 504, 505, 210 N.W.2d 230, 232 (1973). Even though the appellate court may disagree with the trial court's findings, it can reverse only if it has a firm and definite conviction that a mistake was made. *City of Minnetonka v. Carlson,* 298 N.W.2d 763, 766 (Minn.1980).

To qualify as a homestead under Minn. Stat. § 510.01 (1986), the property must be owned and occupied by a debtor as his dwelling place.

> The test to be used in determining whether the house is "owned and occupied" by the debtor is whether the ownership and occupancy affords a significant "community connection" which gives reason to believe that preservation of that connection will make the debtor and his or her family better able to be self-sustaining.

*Cleys v. Cleys,* 363 N.W.2d 65, 70 (Minn.Ct. App.1985) (citing *Denzer v. Prendergast,* 267 Minn. 212, 218, 126 N.W.2d 440, 444 (1964)). The parties each presented evidence as to Hagen's use of the property as his dwelling place. Lieberman pointed out that Hagen had never claimed the property as a homestead for the purpose of receiving state tax benefits.[1] In addition, Hagen had indicated in several financial statements that the Grand Forks condominium was his homestead. Although Lieberman claimed that it relied on the representations made in these financial statements, there was no showing of reliance before the trial court.

Hagen testified by deposition that he lived at the Mentor home about 80 percent of the time. In addition, Hagen listed Mentor as his home address in several personal and business documents.

■ When the evidence conflicts, as here, the appellate court will not disturb the trial court's findings so long as there is evidence reasonably supporting the trial court's determination. *Peterson v. John-ston,* 254 N.W.2d 360, 362 (Minn.1977). Such evidence is to be viewed in the light most favorable to the prevailing party. *Theisen's, Inc. v. Red Owl Stores, Inc.,* 309 Minn. 60, 66, 243 N.W.2d 145, 149 (1976). The burden is on the appellant to show that there is no substantial evidence reasonably tending to sustain the trial court's findings. *Costello v. Johnson,* 265 Minn. 204, 211, 121 N.W.2d 70, 76 (1963).

■ The trial court thoroughly analyzed the facts cited by the parties and concluded that the debtor's "community connection" was clearly in Mentor, Minnesota. Because there was evidence to support the trial court's findings and conclusions, we cannot say the court clearly erred.

Lieberman also claimed in its brief that Hagen abandoned the Mentor home. Under Minn.Stat. § 510.07 (1984), a homeowner

> may remove [from the homestead] without affecting [the homestead] exemption, if he do[es] not thereby abandon the [homestead] as his place of abode. If he shall cease to occupy such homestead for more than six consecutive months he shall be deemed to have abandoned the same unless, within such period, he shall file with the county recorder * * * a notice * * * describing the premises and claiming the same as his homestead.

■ Lieberman offered no evidence to show that Hagen has ceased to occupy the Mentor home for more than six consecutive months, as the statute requires. Indeed, the trial court found that Hagen has never been absent from the Mentor home for more than six months at a time. The supreme court has held on several occasions that temporary absences from the homestead do not constitute an abandonment. *See, e.g., Cysewski v. Steingraber,* 222 Minn. 221, 232, 24 N.W.2d 266, 272 (1946). Nor do frequent absences work a forfeiture of the homestead exemption. *See Wells-Dickey Trust Co. v. Lindberg,* 165 Minn. 492, 493, 206 N.W. 929, 930 (1926).

---

**1.** Neither did Lieberman show, however, that Hagen claimed the North Dakota condominium as a homestead for the purpose of receiving tax benefits in that state, if any were available.

## DECISISON

The trial court's findings were supported by the evidence and therefore were not clearly erroneous.

Affirmed.