**In re Kenneth L. KASDEN, Debtor.**

**Bankruptcy No. 4–94–3841.**

United States Bankruptcy Court,
D. Minnesota.

March 10, 1995.

Konstandinos Nicklow, Meshbesher & Spence, Minnetonka, MN, for creditor.

Thomas G. Wallrich, Fafinski & Wallrich, P.A., Minneapolis, MN, for debtor.

### ORDER DENYING OBJECTOR'S MOTION

ROBERT J. KRESSEL, Bankruptcy Judge.

This case came on for hearing on the joint objection of Thomas F. Miller, the trustee, and Steiner and Saffer, a judgment creditor, to the debtor's claimed exemptions. Thomas G. Wallrich appeared for the debtor. Konstandinos Nicklow appeared for Steiner and Saffer. The trustee did not appear.

This court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157(b)(1) and 1334, and Local Rule 201. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(B).

## BACKGROUND

On March 30, 1992, Steiner and Saffer law firm obtained a judgment in Superior Court of California, County of Los Angeles, for legal fees in the amount of $68,253.73 against Nemadji Earth Pottery, Inc. Approximately one year later, on March 3, 1993, the judgment was amended to include additional judgment debtors, including the debtor, and the amount has since increased to approximately $180,332.

The debtor is a resident of the State of Minnesota and has owned and occupied a residence located at 5521 Grove Street, Edina, Minnesota,[1] since 1980. This property has always been claimed by the debtor as his homestead and is the property at issue in this proceeding. On November 9, 1993, a fire extensively damaged the debtor's home, making it unfit for habitation. Consequently, all of the utilities to the residence were shut off and the debtor made arrangements to live elsewhere.

Following the fire, the debtor began cleaning up the fire debris and rebuilding the house. The rebuilding, which was delayed due to an investigation into the cause of the fire by State Farm Fire and Casualty Insurance Company, the debtor's property casualty insurance company, began around late March or early April 1994. Because of the nature of the investigation, the debtor was prohibited from cleaning up or otherwise disturbing the property and the fire area until late March 1994 when State Farm determined that the fire was accidental.

The debtor began rebuilding his home soon after State Farm concluded its investigation. The debtor was actively involved in this project and spent considerable amounts of time at the property. Furthermore, notwithstanding the fact that the property had few amenities, such as electricity, heat or water, the debtor spent some leisure time, albeit infrequently, at the premises in addition to the time spent clearing and rebuilding the property. The debtor also continued to store his personal belongings in the garage located on the property after the fire.

On August 4, 1994, the debtor filed a voluntary petition under Chapter 7. On his Schedule C, the debtor listed the property as exempt homestead property pursuant to Minn.Stat. §§ 510.01 and 510.02. He also claimed as exempt a cause of action against State Farm for "bad-faith payment" pursuant to Minn.Stat. §§ 510.01, 510.02, 550.37 Subd. 9, and 550.37 Subd. 4(b) and a cause of action against the City of Edina for wrongful imprisonment pursuant to Minn.Stat. § 550.37 Subd. 22.

The trustee and Steiner and Saffer filed a joint memorandum objecting to all three of these exemptions. However, the trustee filed no trial papers and made no appearance at the trial. On December 20, 1994, four days after the trial, the trustee filed a Notice of Proposed Abandonment of Property of the Estate with respect to the property and the cause of action against State Farm. On January 17, 1995, the debtor filed an objection to the trustee's Notice of Proposed Abandonment, which the trustee later withdrew on February 13, 1995.

## ISSUES

1. The primary issue is whether the owner of homestead property who is involuntarily forced to remove himself for more than six consecutive months from his homestead due to casualty, and who fails to file the requisite notice claiming the property as his homestead, is deemed to have abandoned his property under Minn.Stat. § 510.07. I conclude that, under such circumstances, an owner retains his homestead exemption notwithstanding his failure to file the necessary notice. Therefore, I find that the defendant's claimed homestead at 5521 Grove Street, Edina, Minnesota, is exempt.

2. The secondary issues raised by the objecting creditors are whether the debtor is entitled to claim as exempt his causes of action against State Farm for "bad-faith payment" and the City of Edina for wrongful imprisonment. The record on

1. This property is legally described as Lot 1, Block 1, Warden Acres Austin Replat, Hennepin County, Minnesota.

these issues is minimal despite ˙my request to the debtor for further clarification on what the exemptions are and what bases they are premised on. Without the requested clarification, I am unable to fully determine the validity of these exemptions. Therefore, I find that the claimed exemptions for the causes of action against State Farm and the City of Edina are disallowed.

## I. An owner of homestead property who is involuntarily compelled to leave his property due to casualty for more than six consecutive months and who fails to file the requisite notice does not lose his homestead exemption.

Under the Minnesota Constitution, the homestead exemption is a guaranteed right.[2] Minnesota Constitution, Art. 1 § 12; *Joy v. Leonard (In re Joy)*, 5 B.R. 681, 683 (Bankr.Minn.1980); *Ryan v. Colburn*, 185 Minn. 347, 241 N.W. 388 (1932); *Baer v. Huesman (In re Guardianship of Huesman)*, 381 N.W.2d 73, 75 (Minn.Ct.App.1986). As such, it cannot arbitrarily be taken away without the owner's consent. *In re Joy*, 5 B.R. at 683; *Hickman v. Sutherland*, 222 Minn. 161, 23 N.W.2d 593, 597 (1946); *Stewart v. Rhoades*, 39 Minn. 193, 39 N.W. 141 (1888) (noting that "from the care that has been taken to provide for, secure, and protect this important [homestead] right and privilege, it is obvious that no one can be deprived of it without clear and convincing testimony of abandonment"). The underlying policy behind the homestead exemption is not only to preserve the family home but also to foster a secure environment as "obligations are more likely to be fulfilled by those whose connections with the community are stabilized by a protected interest in a relatively permanent place of abode than by those not so anchored." *Denzer v. Prendergast*, 267 Minn. 212, 126 N.W.2d 440, 443 (1964).

The homestead exemption is statutorily defined as:

[t]he house owned and occupied by a debtor as the debtor's dwelling place, together with the land upon which it is situated to the amount hereinafter limited and defined, shall constitute the homestead of such debtor and the debtor's family, and be exempt from seizure or sale under legal process on account of any debt not lawfully charged thereon in writing except such are incurred for work or materials furnished in the construction, repair, or improvement of such homestead, or for services performed by laborers or servants.

Minn.Stat. § 510.01. In the present case, all of the parties agree that the property claimed as exempt homestead property was the debtor's homestead until the date of the fire. What is at issue is whether the debtor lost his homestead exemption after the date of the fire due to his absence from the property for more than six months without filing the appropriate notice.

Minn.Stat. § 510.07 specifies the conditions under which a homestead owner may leave the homestead without losing his homestead right:

... The owner may remove therefrom without affecting such exemption, if the owner does not thereby abandon the same as the place of abode. If the owner shall cease to occupy such homestead for more than six consecutive months the owner shall be deemed to have abandoned the same unless, within such period, the owner shall file with the county recorder of the county in which it is situated a notice, executed, witnessed, and acknowledged as in the case of a deed, describing the premises and claiming the same as the owner's homestead.

Minn.Stat. § 510.07. Pursuant to the statute, there are two possible ways to lose the homestead exemption:

1. by actual abandonment, or
2. by deemed abandonment.

Minn.Stat. § 510.07. The first, and most obvious, is a question of fact. To actually abandon the homestead, the owner must

---

2. Article 1, Section 12 of the Minnesota Constitution states:

A reasonable amount of property shall be exempt from seizure or sale for the payment of any debt or liability. The amount of such exemption shall be determined by law.

leave it intending to abandon the property as his homestead. Here, the debtor did not actually abandon the homestead as he did not remove from it intending to abandon the property as his homestead; rather, the debtor continued to treat the property as his homestead. The debtor began rebuilding the property as his homestead and maintained his intent to live there as soon as was possible. There is really no dispute about this.

■ The second possible way to lose the homestead exemption is by deemed abandonment. Deemed abandonment occurs when the owner of a homestead ceases to occupy the homestead for at least six consecutive months without filing a notice with the county recorder. In this case, the debtor left his homestead after the fire for at least six months without filing the requisite notice. The question, however, is whether the debtor "ceased to occupy" the homestead within the meaning of the statute. This is also a question of fact.

Courts have reasonably applied the statute, construing it "not to be understood as meaning that it requires constant personal presence so as to make a man's residence his prison, or that an enforced temporary leaving of the premises from accidental causes such as fire or flood, or that a temporary absence for purposes of business or pleasure, not amounting to a change of actual residence, would constitute a removal, or ceasing to occupy within the meaning of the statute." *Ouehl v. Peterson*, 47 Minn. 13, 16, 49 N.W. 390 (Minn.1891); *Accord Muscala v. Wirties*, 310 N.W.2d 696, 698 (Minn.1981); *Cysewski v. Steingraber*, 222 Minn. 221, 24 N.W.2d 266, 271 (1946); *Kramer v. Lamb*, 84 Minn. 468, 87 N.W. 1024, 1025 (1901); *Clark v. Dewey*, 71 Minn. 108, 110, 73 N.W. 639 (Minn.1898) (noting that a temporary absence, "enforced by some casualty", does not constitute "ceasing to occupy, or an abandonment"); *Joy v. Cooperative Oil Association*, 360 N.W.2d 363, 365 (Minn.Ct.App.1984).

■ The courts have applied this casualty theory in several instances, making it applicable to any owner who is involuntarily compelled to leave his homestead, such as in cases of imprisonment, insanity, or court order. *See Millett v. Pearson*, 143 Minn. 187, 173 N.W. 411 (1919) (while imprisoned, a person retains his homestead exemption as there must be a voluntary act by a person free from restraint and capable of making such a decision for that person to lose or acquire a residence); *Beigler v. Chamberlin*, 145 Minn. 104 (1920) (due to the involuntary nature of the debtor's commitment to a state insane asylum, the debtor did not lose his homestead exemption); *In re Joy*, 5 B.R. at 681 (a husband who was forced to leave his home by court order retained his homestead exemption). It is clear that, if circumstances compel an owner's removal from his homestead, that owner does not cease to occupy the homestead within the meaning of the statute and is not deemed to have abandoned it. In this case, the debtor had no other recourse but to temporarily leave his homestead because of the severe fire damage to it. The debtor's removal was involuntary and compelled solely by this casualty. Pursuant to the cases applying the casualty theory, this debtor did not cease to occupy the homestead within the meaning of the statute and is, therefore, not deemed to have abandoned his homestead.

■ Furthermore, the decisions of the courts "reflect a disposition to protect the person claiming the homestead exemption as against those asserting the right to reach his assets in satisfaction of claims" and the policy of giving the debtor " 'sanctuary' from just claims in his 'homestead' has prevailed with significant uniformity". *Denzer*, 126 N.W.2d at 444. *Accord Lieberman Music Co. v. Hagen*, 404 N.W.2d 290, 292 (Minn.Ct.App. 1987); *Cleys v. Cleys*, 363 N.W.2d 65, 60 (Minn.Ct.App.1985).

The objectors cite *Joy*, 360 N.W.2d 363, as the premise for their argument. *Joy*, although recognizing the casualty theory, held that a debtor who had removed from his homestead due to casualty for more than six months without filing notice was deemed to have abandoned his homestead and therefore lost the homestead exemption. Although *Joy* is relevant to the issue at hand, it is neither compelling nor persuasive. First, *Joy* had a strong dissent which argued in favor of both the casualty theory and the policy of protecting the homestead exemption against credi-

tors. Second, *Joy* mentioned the casualty theory but summarily dismissed it with little discussion. Furthermore, *Joy*'s analysis of its facts and the applicable law is conclusory, making it difficult to apply to the particular facts in this matter.

There, like the debtor in this case, the debtor was forced to leave his homestead due to fire. However, unlike the debtor here, that debtor left his property for over two years without attempting to rebuild it. Indeed, it is unclear whether the debtor in *Joy* maintained any connections with the property after he removed from it. In this case, the debtor began rebuilding his homestead less than six months after the fire occurred. He continued to occupy the property physically, although albeit not as a residence. The debtor stored some of his possessions at the property and, on occasion, friends visited him at the property. The debtor maintained his community connections in the area, continuing to vote in the area and not changing his homestead address. It is apparent that the debtor maintained a continuous relationship with the property beyond that of a future intent to return to the property and made a concerted and diligent effort to reestablish his homestead there.

In light of the case law applying the casualty theory, the evidence of the debtor's continuous relationship with and physical use of the property, and his efforts to rebuild his homestead within six months of the casualty, the debtor continued to occupy the homestead within the meaning of the statute.

**II. Due to the inadequacy of the record and counsel's failure to clarify it, the claimed exemptions for the causes of action against State Farm and the City of Edina are disallowed.**

■ The objectors filed a joint memorandum objecting to the debtor's claimed exemptions for the causes of action against State Farm and the City of Edina. I asked the debtor's attorney at the preliminary hearing to clarify the record on these issues and to provide me with a more detailed description of the nature of the claimed exemptions and the premises upon which they were based. His failure to do so makes it difficult to determine the validity of these claims. Furthermore, no evidence or testimony regarding these claims was presented at trial or is in the record. For these reasons, I find that these claims are disallowed.

### CONCLUSION

Although the debtor was forced to leave his homestead for more than six consecutive months because of casualty and failed to file the requisite notice, he continued to occupy the homestead within the meaning of the statute.

The debtor has failed to establish his right to exempt the causes of action against State Farm and the City of Edina.

THEREFORE, IT IS ORDERED THAT:

1. The property legally described as Lot 1, Block 1, Warden Acres Austin Replat, Hennepin County, Minnesota, is exempt, and

2. The causes of action against State Farm for "bad-faith payment" and the City of Edina for wrongful imprisonment are not exempt.