FIRST NATIONAL BANK OF MANKATO v.
LESTER A. WILSON AND ANOTHER.[1]

May 4, 1951.

No. 35,502.

---

[1]Reported in 47 N. W. (2d) 764.

*Josiah A. Baker,* for appellant.

*E. Raymond Hughes,* for respondents.

MAGNEY, JUSTICE.

In an action to set aside conveyances of real property as a fraud on the rights of a judgment creditor, defendants prevailed. Plaintiff appeals from the judgment entered.

Defendants, Lester A. Wilson and Fern M. Wilson, are husband and wife. On August 19, 1949, a judgment was entered in the municipal court of Mankato in favor of plaintiff against defendant Lester A. Wilson and another in the sum of $779.30. It was based on a claim which accrued prior to the conveyances above mentioned. On August 24, 1949, the judgment was docketed in the office of the clerk of the district court of Blue Earth county.

On March 25, 1948, defendants as joint tenants became the owners of a home and lot known as 114 Fraser street, Mankato. They occupied it as their homestead until they leased the premises to one Paul Boeger for one year from October 1, 1948. Defendants, at the time of leasing, sold to Boeger a kitchen table and chairs, a kitchen cabinet and a bed, and left in the house two stoves, some rugs, and walnut shelves. A small table and chairs, a lawn mower, rake, and shovel, together with winter clothing, were stored in the attic.

Shortly after October 1, 1948, Wilson and his family left in a trailer house for Texas, where he had a road job. They returned in the latter part of February 1949. When they left for Texas, it was their intention to stay there only temporarily; and it was not their intention to abandon their Fraser street property as a homestead. Toward the latter part of April, they spoke to the tenants about giving up possession prior to the expiration of their lease on October 1. The tenants said they could not do that, as they could not find any other place to live. Defendants were unable to rent a

place, so in May they purchased the premises known as 615 North Second street on a contract for deed. Defendant Lester A. Wilson testified:

"* * * we didn't really buy the place, we took it over just for the time being because we couldn't rent a place."

They lived in the trailer house in the back yard of these premises while the house was being fixed up and cleaned and then moved into it. In the latter part of September, they moved back into their house on Fraser street and have lived there continuously since that time. The Fraser street property had homestead classification for tax purposes in 1948, but not in 1949. The North Second street property had homestead classification in 1948 and 1949. On July 19, 1949, defendants, through a third party, executed a deed conveying the Fraser street premises back to defendant Fern M. Wilson. On July 26, 1949, defendants filed in the office of the register of deeds a notice of homestead claim in the Fraser street premises.

On October 19, 1949, the sheriff levied upon the interest of defendant Lester A. Wilson in and to the Fraser street premises. The court found that the deeds from defendants through a third party back to defendant Fern M. Wilson were in no respect fraudulent conveyances as to plaintiff. It further found that defendants acquired homestead rights in and to the Fraser street property on March 25, 1948, and that they had never at any time abandoned their homestead rights and the exemption from levy thereunder. The court held that plaintiff's judgment was not a lien upon the interest of the defendant Lester A. Wilson in and to the Fraser street property; that the interest of defendant Lester A. Wilson was exempt as homestead from the lien of plaintiff's judgment against him; and that the levy of execution be set aside and declared null and void and of no effect as against the premises. Plaintiff appeals from the judgment entered. It contends that the court's finding that the Wilsons never abandoned their homestead rights in the property transferred is not sustained by the evidence.

While this action is one to set aside a fraudulent conveyance of real property between husband and wife, the parties have properly recognized that the important legal issue involved in this appeal is one of homestead rights. The judgment docketed with the clerk of the district court of Blue Earth county on August 24, 1949, became a lien upon all nonhomestead property then or thereafter owned by Lester A. Wilson in the county. M. S. A. 548.09. Since a homestead is, with few exceptions, exempt from the claims of creditors (§ 510.01), and since by statute (§ 510.07) a debtor may convey a homestead without subjecting it or the proceeds from the sale thereof for one year to any judgment or debt from which it was exempt in his hands, a conveyance of the homestead cannot be set aside by creditors as fraudulent, even though the debtor conveying the property intends thereby to defraud his creditors. Morrison v. Abbott, 27 Minn. 116, 6 N. W. 455; Cysewski v. Steingraber, 222 Minn. 221, 24 N. W. (2d) 266; Sisco v. Paulson, 232 Minn. 250, 45 N. W. (2d) 385. The right to sell and convey the homestead is absolute, and the purpose of the transfer is immaterial, as is the amount of the consideration paid. Morrison v. Abbott and Sisco v. Paulson, *supra.*

It is apparent, therefore, that the conveyances challenged by plaintiff may not be set aside as fraudulent if the property so conveyed was the homestead of defendants on July 19, 1949, when they jointly conveyed the property in question through a third party to defendant Fern M. Wilson as sole owner.

Defendants had homestead rights in the property here in question when they moved out on October 1, 1948. The important questions are whether they thereafter abandoned the property as their homestead, and, if so, whether they failed to reëstablish it prior to July 19, 1949.

M. S. A. 510.07 provides in material part:

"* * * If he [the owner] shall cease to occupy such homestead for more than six consecutive months he shall be deemed to have abandoned the same unless, within such period, he shall file with the register of deeds of the county in which it is situated a notice, * * * claiming the same as his homestead."

It will be observed from the statement of facts that defendants removed from and ceased to actually occupy the premises in question as a dwelling place from October 1, 1948, until the latter part of September 1949, practically a year, during which time the premises were leased to tenants. They failed to file the notice required by § 510.07 until nine months after they ceased occupancy, and they did not actually reoccupy the premises until more than a month after plaintiff's judgment was docketed.

Upon the facts of the case, we would be reluctant to reverse the finding of the court that defendants at no time abandoned their claim of homestead rights to the premises and the exemption of levy thereunder, and that their acts were consistent with their claim of homestead rights. However, in our opinion, the plain language of § 510.07, the legislative history of that section, and the numerous cases interpreting it, preclude us from upholding the decision of the trial court. It is defendants' contention that this statutory provision merely creates a presumption of abandonment, which may be rebutted by proof of intention not to abandon.

The statute reads, "shall be deemed to have abandoned the same [the homestead] unless * * *." Black, Law Dictionary (3 ed.) p. 538, defines the word "deem" as follows: "To hold; consider; adjudge; condemn; determine; treat as if; construe." Where, as here, the word "deemed" is followed by an "unless" clause, the conclusion seems inescapable that the legislature intended that any removal from the premises for more than six months should be held, considered, adjudged, construed, or treated as if it were an abandonment *unless* the one method (filing of notice) specified in the statute for preserving the homestead exemption be followed. In other words, after the owner has ceased to occupy the premises for six months or more without giving the notice required by statute, the presumption of abandonment becomes conclusive.

Elsewhere in our statutes the word "deemed" appears to be treated as creating a conclusive presumption. Under § 268.04, subd. 23, an individual is "deemed 'unemployed' in any week during which he performs no service and with respect to which no wages are pay-

able to him, * * *." For purposes of the statute in which this section appears, a person is treated as if unemployed under the circumstances stated, even though he is not actually unemployed under the ordinary meaning given the word. See, Jackson v. Minneapolis-Honeywell Regulator Co. 234 Minn. 52, 47 N. W. (2d) 449. Likewise, under § 170.54, whenever any motor vehicle is operated upon the highways by one other than the owner with the owner's consent, express or implied, the operator is in case of accident "deemed the agent of the owner." Once the owner's consent is shown, the presumption of agency is conclusive. Ballman v. Brinker, 211 Minn. 322, 1 N. W. (2d) 365. Similarly, under § 170.55, use and operation by a nonresident of a motor vehicle upon the highways of this state is "deemed an appointment by such * * * non-resident * * * of the commissioner of highways to be his true and lawful attorney * * * [for certain specified purposes]." Here, as in the two preceding statutory sections, the word "deemed" appears to have been used to create a conclusive presumption of the fact deemed to be a fact. With a few exceptions, this appears to be the normal interpretation of the word "deemed" as used in the statutes of other states. See, 11 Wd. & Phr. (Perm. ed.) 478-482.

We believe that the foregoing interpretation of § 510.07 is further supported by its statutory history and the cases decided under it and its predecessor statutes. Under the earliest homestead statute which has come to our attention (R. S. 1851, c. 71, § 93), property was held to be exempt as a homestead only so long as it was owned and occupied as a residence by the debtor or his family. Folsom v. Carli, 5 Minn. 264 (333). Under a later statute (L. 1858, c. 35, § 1, appearing as § 92 of Pub. Stat. 1849-1858, c. 61), which provided a homestead exemption for certain property "occupied by any resident of this state," it was again held that actual residence upon the premises was necessary to entitle a debtor to the privilege of exemption. Tillotson v. Millard, 7 Minn. 419 (513). In that case the court said (7 Minn. 423 [519]):

"* * * To call the premises the homestead of the debtor and his family, when the debtor resides elsewhere and rents or leaves

the premises vacant, would be a misnomer—a use of language never contemplated by the legislature."

By L. 1860, c. 95, appearing as § 8 of G. S. 1878, c. 68, the homestead statute was amended to permit the owner of a homestead to "remove therefrom, or sell, and convey the same, * * * [without rendering the homestead liable to forced sale on execution, etc.]." In Donaldson v. Lamprey, 29 Minn. 18, 11 N. W. 119, this court was urged to interpret that amendment as permitting the maintenance of homestead exemption rights on property which had been permanently abandoned as a residence. The court held that the 1860 amendment permitted removal from the premises only for temporary purposes. In the same case, the court was asked to construe a further amendment to the homestead laws, L. 1868, c. 58, appearing as § 9 of G. S. 1878, c. 68 (now incorporated in M. S. A. 510.07), which read as follows:

"Whenever the owner of a homestead under the laws of this state shall remove therefrom and cease to occupy the same as such homestead for a period of more than six consecutive months, his right to claim the same as such *shall cease and determine* on the expiration of such period of six months, unless prior thereto he shall file in the office of the register of deeds * * * a notice * * * that he claims the same as such, * * *."

Without indicating the exact effect of this amendment, the court said that it limited and restricted the right of removal given by the 1860 amendment. Later decisions consistently construed the 1868 amendment set forth above to mean that the homestead exemption was lost by removing from or ceasing to occupy the premises as a residence for more than six months (unless notice was filed), even though there was an intention to return. Russell v. Speedy, 38 Minn. 303, 37 N. W. 340; Baillif v. Gerhard, 40 Minn. 172, 41 N. W. 1059; Quehl v. Peterson, 47 Minn. 13, 49 N. W. 390; Clark v. Dewey, 71 Minn. 108, 73 N. W. 639; see, Kramer v. Lamb, 84 Minn. 468, 87 N. W. 1024. In the Baillif case the court said (40 Minn. 174, 41 N. W. 1059):

"* * * It has never been supposed that a homestead could exist without actual occupancy, except, in so far as having been once acquired by occupancy, it may, after the occupancy has ceased, be preserved by the provisions of sections 8 and 9,—that is, for six months without filing notice, and for a longer period *only by virtue of the notice filed.*" (Italics supplied.)

In R. L. 1905, § 3458, the language of the 1868 amendment, pertaining to the requirement of filing notice, was revised to read as it now appears in § 510.07. The report of the statute revision commission which accomplished this revision indicates that no substantive change was made in rewriting the provision of the homestead statute relating to notice requirements. See, Report of Statute Revision Commission, Index R. L. 1905, c. 68, p. 28.

Since the revision of 1905, the cases have consistently followed the earlier decisions under the original notice statute of 1868 in holding that removal from a homestead for more than six months constitutes an abandonment, unless within the six-month period a notice claiming homestead rights is filed. Hall v. Holland, 138 Minn. 403, 165 N. W. 235; Sheehan v. First Nat. Bank, 163 Minn. 294, 204 N. W. 38; see, Jaenicke v. Fountain City Drill Co. 106 Minn. 442, 444, 119 N. W. 60, 61; Gordon v. Emerson-Brantingham Imp. Co. 168 Minn. 336, 210 N. W. 87. In other words, these cases have interpreted the words "shall be deemed to have abandoned" in § 510.07 to mean the same thing as the words "shall cease and determine" in G. S. 1878, c. 68, § 9. Both phrases have been construed as creating a presumption of abandonment which can only be rebutted by filing a notice of homestead claim within six months after the owner or his family ceases to occupy the premises.

Defendants contend that a different rule was laid down in Lundgren v. Yde, 171 Minn. 176, 213 N. W. 537. In that case, plaintiff rented her homestead, furnished except as to linen and dishes, on September 5, 1925. On January 5, 1926, four months later, the tenant vacated and plaintiff returned alone to her home and kept the fire burning until the next day, when she rented it to another tenant. The latter tenant vacated on April 6, 1926, and plaintiff

then resumed her occupancy. This was only about three months after plaintiff had last occupied the premises. At all times she had kept the home and its contents intact for her future use. At no time did plaintiff "cease to occupy such homestead for more than six consecutive months." Under these circumstances, this court properly held that the lower court's finding of nonabandonment did not depend upon the filing of notice so long as the evidence supported the conclusion that plaintiff did not (171 Minn. 177, 213 N. W. 538) "cease to occupy such homestead" within the meaning of G. S. 1923, § 8342 (now § 510.07). The implication of this decision is that plaintiff could not have preserved her homestead rights merely by filing a notice six months and 18 days after she actually ceased to occupy the premises. So construed, the Lundgren case is further authority for holding that defendants in the case before us abandoned their homestead when they removed from and ceased to occupy it for nearly a year and failed to file a notice of homestead claim until nine months after they rented the premises and moved to Texas. In our opinion, the property conveyed by defendants on July 19, 1949, was not an exempt homestead on that date.

Judgment reversed with directions to enter judgment for plaintiff.