**In re Steven Frank JOY, Debtor.**

**Steven Frank JOY, Debtor,**

v.

**Brian F. LEONARD, Trustee.**

**Bankruptcy No. 3–79–1682.**

United States Bankruptcy Court,
D. Minnesota,
Third Division.

Aug. 22, 1980.

James A. Meyer, White Bear Lake, Minn., for debtor.

Brian F. Leonard, St. Paul, Minn., trustee.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

JACOB DIM, Bankruptcy Judge.

This matter came on for hearing on July 16, 1980 before the Honorable Jacob Dim, Bankruptcy Judge, pursuant to the timely objection of the trustee to the claim of the debtor of exemption. Debtor, Steven Frank Joy, was represented by James A. Meyer of Meyer, Hiniker and Fleming. Trustee, Brian F. Leonard, appeared pro se.

The facts having been stipulated by the parties, this Court heard oral arguments upon the briefs of the parties and based on all the files and records makes the following:

### FINDINGS OF FACT

1. Prior to December 13, 1977, the debtor and his spouse occupied the house located at 1424 Fourteenth Avenue, St. Paul Park, Minnesota as their homestead.

2. On December 13, 1977, the Washington County Family Court in a marriage dissolution action issued a Temporary Order requiring the debtor to vacate the premises.

3. The debtor moved out according to the order of the Family Court. He returned to the premises occasionally to visit his children and perform routine maintenance.

4. The debtor did not at any time file a homestead notice as set forth in Minnesota Statutes § 510.07.

5. A Final Decree of Dissolution was entered on May 14, 1979 awarding the house to the debtor's spouse subject to a lien in favor of the debtor in the amount of $19,250.00.

6. The debtor filed a petition under Chapter 7 on December 6, 1979 claiming the

lien on the house as exempt under Minnesota Statutes § 510.07.

"510.07   Sale or removal permitted; notice

The owner may sell and convey the homestead without subjecting it, or the proceeds of such sale for the period of one year after sale, to any judgment or debt from which it was exempt in his hands. He may remove therefrom without affecting such exemption, if he do not thereby abandon the same as his place of abode. If he shall cease to occupy such homestead for more than six consecutive months he shall be deemed to have abandoned the same unless, within such period, he shall file with the county recorder of the county in which it is situated a notice, executed, witnessed, and acknowledged as in the case of a deed, describing the premises and claiming the same as his homestead. In no case shall the exemption continue more than five years after such filing, unless during some part of the term the premises shall have been occupied as the actual dwelling place of the debtor or his family."

## MEMORANDUM

The trustee has asked this court to determine that the debtor cannot claim a homestead exemption under Minnesota Statute § 510.07. The trustee does not claim any intention to abandon on the part of the debtor. The trustee's claim is based on a claimed absence from the homestead for over six (6) months without filing of a notice claiming the property at issue as his homestead.

The trustee presents a strong case. It is undisputed that since December 13, 1977, the debtor has not resided in the home. It is also true that the debtor did not file any notice. The sole issue, and an issue of first impression in Minnesota, is whether the debtor lost his homestead exemption after the six (6) months despite the fact that the debtor was compelled to leave his home. This Court is convinced that he did not.

The homestead exemption in Minnesota is not a statutorily granted privilege, but a constitutionally guaranteed right. Minnesota Constitution, Art. 1 § 12; *Ryan v. Colburn*, 185 Minn. 347, 241 N.W. 388 (1932). As such it cannot be taken away without a waiver of that right by the claimant. Its purpose is to preserve the family home even at the expense of the just demand of creditors. *Tomlinson v. Kandiyohi County Bank*, 162 Minn. 230, 202 N.W. 494 (1925).

There are two possible means to lose a homestead exemption. The first is to intentionally abandon the homestead. This is inapplicable to the present case. The second is to leave the homestead for over six (6) months without filing the notice required by M.S.A. § 510.07. In that case, there is a conclusive presumption that the claimant has waived his right. *First National Bank of Mankato v. Wilson*, 234 Minn. 160, 47 N.W.2d 764 (1951).

The trustee argues that *First National Bank of Mankato v. Wilson*, supra, governs this case. This Court does not agree. The homestead exemption has always been liberally construed in favor of the debtor. Only when it is clear that the right has been waived should the claimant be deprived of his constitutional guarantee.

The facts in the present case differ from those in *Wilson* in one significant matter. In *Wilson*, the claimant left his home voluntarily with an intention to return. In the present case, the debtor was compelled by court order to leave and remain away until such time as a determination was made in the marriage dissolution proceedings. This difference forces the Court to conclude that the debtor in the present case never left his home.

In *Denzer v. Prendergast*, 267 Minn. 212, 126 N.W.2d 440 (1964), the Minnesota Supreme Court stated the test for determining whether the claimant "owned and occupied" the home:

"We are satisfied that in close cases like this one the test to be used in determining whether the house is "owned and occupied" by the debtor should be whether the ownership and occupancy affords a

684

community connection of such significance as to give reason to believe that the preservation of that connection will in the long run make the debtor and his family better able to fulfill their social obligation to be self-sustaining".

The debtor here did all within his power to maintain those community connections. He maintained and kept up his home. He visited his children when possible. The debtor's family, including his wife, continued to reside in the home. The only break in the debtor's community connections was his absence; an absence forced upon him by court order.

The only case dealing with enforced absence from a home this Court has found is *Millett v. Pearson*, 143 Minn. 187, 173 N.W. 411 (1916) where the claimant was sentenced to prison. In that case, the claimant sold his house within six (6) months but after a creditor had attempted to attach it. The Court said:

"As a general rule of law persons under legal disability or restraint or persons in want of freedom are incapable of losing or gaining a residence by acts performed by them under the control of others. There must be an exercise of volition by persons free from restraint and capable of acting for themselves in order to acquire or lose a residence. A person imprisoned under operation of law does not thereby change his residence".

Here the debtor's leaving was by operation of law and not an act of his own volition. He was legally incapable of residing in his house, but he maintained all the contact with the community permitted him.

This Court, therefore, makes the following:

## CONCLUSIONS OF LAW

1. That from December 13, 1977 when ordered to leave the home until May 14, 1979 when a final decree was entered in the dissolution proceedings, the debtor sufficiently "owned and occupied" his house to maintain his homestead exemption.

2. That on December 6, 1979, the debtor's lien on the house received pursuant to the final decree on May 14, 1979 was still protected by M.S.A. § 510.07 which exempts proceeds from a sale of a homestead for one year, and as selected by debtor pursuant to § 522(b) of the Bankruptcy Code.

3. That the trustee has no right, title, or interest in the lien of the debtor under the Bankruptcy Act.

LET JUDGMENT BE ENTERED ACCORDINGLY.