### In re Marlyce E. MUELLER, Debtor.

### Bankruptcy No. 96–34000.

United States Bankruptcy Court,
D. Minnesota,
Third Division.

June 30, 1997.

---

S. Warren Gale, Bloomington, MN, for Debtor.

1. The identification of the county in the legal description here is apparently an error. All other exhibits in the record place this real estate in Rice County, Minnesota.

Sheridan J. Buckley, St. Paul, MN, trustee.

## ORDER SUSTAINING TRUSTEE'S OBJECTION TO DEBTOR'S CLAIM OF HOMESTEAD EXEMPTION

GREGORY F. KISHEL, Bankruptcy Judge.

This Chapter 7 case came on before the Court for hearing on the Trustee's objection to the Debtor's claim of exemption in a lien against certain real estate. Trustee Sheridan J. Buckley appeared on behalf of the bankruptcy estate. The Debtor appeared personally, and by her attorney, S. Warren Gale. The Court received evidence, directed the submission of closing argument in writing, and took the matter under advisement after the record was completed. Upon the record thus made, the Court makes the following order.

The Debtor filed a voluntary petition for relief under Chapter 7 on July 19, 1996. She filed her statements and schedules on July 25, 1996. On her Schedule A ("Real Property"), she listed an interest as "Owner" in real estate located at 983 Hammer Avenue in St. Paul, Minnesota. On Item 16 ("Alimony, Maintenance, Support and Property Settlements to which the debtor is ... entitled") of her Schedule B ("Personal Property"), she disclosed another property interest, described as follows:

> $45,000 Lien on homestead (2574 W. 89th St., Lot 7, Block 2, Keya Paha Ranch, First Subdivision, Dakota County, Northfield, Minnesota) in divorce decree docketed on 1/31/96 in Rice County, Minnesota. Court file number: 66-F9-95-209.[1]

She stated the current market value of her interest in the latter asset as $45,000.00. In her Schedule C, she elected pursuant to 11 U.S.C. § 522(b)(2)(A) to use the exemptions afforded to judgment debtors under Minnesota state law, and claimed her interest in the "lien" as exempt.[2]

2. In this original Schedule C, the Debtor did not claim an additional exemption in the real property at 983 Hammer Avenue, St. Paul. In amended schedules filed on January 31, 1997, she did. Under the Minnesota homestead exemption laws,

The Trustee timely objected to this claim of exemption. The record establishes the relevant facts as follows:

1. In June, 1978, the Debtor married Robert Mueller. Both spouses brought children and assets from prior marriages into this relationship.

2. In particular, the Debtor held at least $60,000.00 in cash proceeds from the sale of the marital dwelling from her next prior marriage.

3. The Debtor invested this sum in a house that she purchased and shared with Robert. The Muellers later sold that home, and reinvested the proceeds in one or more successor dwellings.

4. Ultimately, these funds, and others generated during their marriage, were applied to the purchase of the property at 2574 West 89th Street in Northfield.

5. Over its 17-year duration, the Muellers' marriage was marked by frequent stress and contention. In the later years of the relationship, the spouses separated from time to time, for intervals that varied in length.

6. On February 27, 1994, the Debtor physically vacated the Northfield dwelling and moved into a mobile home in Kenyon, Minnesota. She moved the mobile home to Farmington, Minnesota later in 1994, and resided there until April 1, 1996. On that date, she purchased and moved into the property at 983 Hammer Avenue in St. Paul that she claimed as her homestead in her amended Schedule C.

7. The Debtor moved out of the Northfield dwelling to separate herself from the emotional tumult of the environment there; she wished to concentrate on completing a community college nursing program, to make herself more employable. Robert initially opposed the separation, but then acquiesced. Until the Christmas holidays of 1994, the Muellers continued to see one another and to share their children's company on a relatively amicable basis; they considered reconcilia-

tion, and frequently stayed together overnight in Northfield.

8. After a very antagonistic incident on Christmas Day, 1994, the Debtor resolved to end the formal relationship. She saw an attorney in January, 1995, and commenced proceedings for dissolution of the marriage.

9. In those proceedings, the court entered an order for temporary relief on April 5, 1995. Robert was awarded the temporary use and possession of the Northfield dwelling; the Debtor was awarded the same for the mobile home.

10. The dissolution proceedings went on for over a year, through a process of negotiation. Throughout, the Debtor considered pressing for a division of property under which she would be awarded the Northfield dwelling and would move back into it. Through her dissolution counsel, she suggested that prospect to Robert on one or more occasions.

11. Ultimately, however, the Muellers entered a Marital Termination Agreement under which Robert was awarded title to and possession of the Northfield dwelling.

12. That agreement was incorporated into a Judgment and Decree of Dissolution of Marriage, entered in the Minnesota State District Court for the Third Judicial District, Rice County, on January 31, 1996. Conclusion of Law 7 of that Judgment and Decree provides, in pertinent part:

7. *Homestead.* [Robert]· is awarded the entire right, title, interest and equity in and to the homestead of the parties, located in Rice County, Minnesota being legally described as:

Lot 7, Block 2, Keya Paha Ranch, First Subdivision, Rice County, Minnesota, according to the recorded plat thereof on file and of record in the office of the County Recorder, Rice County, Minnesota.

subject to the encumbrances thereon, which [Robert] shall pay according to their terms and hold [the Debtor] harmless therefrom, and subject further to a non-

the Debtor is not barred *per se* from claiming a "double exemption" like this. *O'Brien v. John-* *son,* 275 Minn. 305, 148 N.W.2d 357, 361 (1967).

interest bearing lien in favor of [the Debtor] on said real estate in the amount of $45,000. The lien shall be due and payable upon the occurrence of the first of the following events:

a. [Robert] moving from the residence;

b. The death of [Robert] or the parties' daughter, Elizabeth;

c. [Robert's] remarriage;

d. Elizabeth's emancipation;

e. October 31, 1998;

f. Failure of [Robert] to timely pay all mortgage, tax, insurance and utility payments on the homestead.

. . .

[The Debtor] shall execute a Quit Claim Deed in favor of [Robert]. At such time as [the Debtor]'s lien is satisfied, [the Debtor] shall execute a Satisfaction of Marital Lien in recordable form, releasing any further interest in the homestead.

13. This provision reflected the parties' recognition that the Debtor had infused substantial nonmarital property into the marital finances. To compensate her for that, Robert's obligation to pay her the $45,000.00 was created and then was secured by the "dissolution lien" against the Northfield dwelling.[3]

14. The Debtor executed the Quit Claim Deed in favor of Robert that the Judgment and Decree required.

15. As of the Debtor's bankruptcy filing, Robert still lived at the Northfield dwelling with Elizabeth, the Muellers' minor daughter by their marriage. Elizabeth was still a student in high school and had not been emancipated.

16. When the Debtor negotiated terms for the purchase of her homestead at 983 Hammer Avenue, St. Paul, she and her sellers used a contract for deed as the financing vehicle. Under the terms of the one that they executed on April 1, 1996, the Debtor agreed to pay a down payment of $5,000.00 toward the purchase price of $80,000.00, with an "[a]dditional $45,000.00 down on or before November 1998." The Debtor expected to use the property-division payment that Robert was to make under the judgment and decree as the source for the funds she would need to make the $45,000.00 payment.

17. When she entered the contract for deed, the Debtor did not execute any document to assign or pledge her right to the property-division payment to her sellers. She had not done so before she filed for bankruptcy.

18. Robert had not made any payment on the $45,000.00 obligation before the Debtor filed for bankruptcy.

■ When the Debtor claimed her interest in the dissolution lien against the Northfield dwelling as exempt, she cited MINN.STAT. § 510.07.[4] The backdrop of this statute, of course, is the general provisions of the Minnesota homestead laws, MINN.STAT. §§ 510.01–510.02.[5]

The Trustee maintains that MINN.STAT. § 510.07 no longer protects the Debtor's right to payment from Robert, or the security granted for it, from the claims of her creditors. He first posits that the "proceeds" of a former homestead contemplated

---

**3.** Robert was also obligated to pay the Debtor $15,000.00 in cash when the judgment and decree was entered. He did so. This right to payment having been satisfied, it is irrelevant to this case.

**4.** Subject to an exception that does not apply here, this statute provides in pertinent part:

The owner may sell and convey the homestead without subjecting it, or the proceeds of such sale for the period of one year after sale, to any judgment or debt from which it was exempt in the owner's hands . . .

**5.** Subject to an exception that does not apply here, MINN.STAT. § 510.01 provides as follows:

The house owned and occupied by a debtor as the debtor's dwelling place, together with the land upon which it is situated to the amount of area and value hereinafter limited and defined, shall constitute the homestead of such debtor and the debtor's family, and be exempt from seizure or sale under legal process on account of any debt not lawfully charged thereon in writing . . .

MINN. STAT. § 510.02 then "limit[s] and define[s]" the amount of area and value of an exempt homestead. The details of its limitations and definition are not relevant to the dispute at bar.

by this statute are limited to cash in hand. Then, as he would have it, a "sale and conveyance" of the Debtor's interest in the exemptible real estate took place in the consummation of the dissolution decree, and any resultant cash proceeds could retain their exempt character for only one year after that event. Because the Debtor's legal right to a cash payment did not even mature within that year, the Trustee argues, it could not qualify for the exemption.

The Debtor's counsel argues several aspects of Minnesota homestead law in response, but he mainly relies on *In re Joy*, 5 B.R. 681 (Bankr.D.Minn.1980) (Dim, J.). *Joy* involved core facts quite similar to those at bar; a debtor had left a marital homestead under the onus of a temporary order in dissolution proceedings, and his spouse had received temporary use and occupancy; in the final decree the spouse was awarded full right, title, and interest in the homestead, subject to a lien in favor of the debtor to secure a property-division award to him; and the debtor then went into bankruptcy, claiming the right to payment and the lien as exempt under MINN.STAT. § 510.07.

*Joy* is cited with some regularity by attorneys before this court. The decision, however, is more noteworthy for what it does *not* discuss, than for what it does. Much of its text is a recapitulation of the general purposes of the homestead exemption laws in Minnesota, and their function of fostering "community connections."[6] When it gets down to applying specific rules of law, however, *Joy* does not get much more focused than that.

Ultimately, *Joy* applies the same principles to the exemptibility of a post-dissolution right to payment secured by a lien against a former . marital homestead, as are applied under the statute to an ownership interest in real estate. With the governing rules conceived as such, then, parties vying over the exemptibility of such a property right must contend with the concepts of "occupancy," as required by MINN.STAT. § 510.01, and "abandonment," as governed by caselaw and MINN. STAT. § 510.07.[7] The latter inquiry then implicates the *de facto* and *de jure* varieties of abandonment treated in recent caselaw out of this Court.[8] Thus, the debtor in *Joy* prevailed on the theory that he had to be forgiven his failure to file the statutory notice of MINN.STAT. § 510.07; he had been "compelled by court order to leave and remain away" from the homestead and had been rendered "legally incapable of residing" in it. In turn, he was deemed not to have abandoned his right to claim a homestead exemption for the rights that traced back to his marital dwelling. The trustee's objection had to be summarily overruled.

Even on a brief reading, *Joy* is unsatisfying. The decision finesses the strict cutoff of homestead exemption rights that is dictated by Minnesota state appellate court decisions

---

6. This facet of *Joy* was prompted, no doubt, by caselaw precedent's exhortation to liberally construe the exemption in favor of the debtor—a frequent fixture of the Minnesota Supreme Court's homestead decisions from earlier years. *See, e.g., Northwestern Nat'l Bank v. Kroll*, 306 N.W.2d 104, 105 (Minn.1981); *Denzer v. Prendergast*, 267 Minn. 212, 126 N.W.2d 440, 444 (1964); *Application of Hickman*, 222 Minn. 161, 23 N.W.2d 593, 597 (1946); *Ryan v. Colburn*, 185 Minn. 347, 241 N.W. 388, 389 (1932); *Mulroy v. Sioux Falls Trust & Savings Bank*, 165 Minn. 295, 206 N.W. 461, 462 (1925); *Kiewert v. Anderson*, 65 Minn. 491, 67 N.W. 1031, 1033 (1896).

7. The abandonment provisions of MINN.STAT. § 510.07 fall later in the statute than that cited at n. 2 *supra*. They are as follows:

> If the owner shall cease to occupy such homestead for more than six consecutive months the owner shall be deemed to have abandoned the same unless, within such period, the owner shall file with the county recorder of the county in which it is situated a notice, executed, witnessed, and acknowledged as in the case of a deed, describing the premises and claiming the same as the owner's homestead. In no case shall the exemption continue more than five years after such filing, unless during some part of the term the premises shall have been occupied as the actual dwelling place of the debtor or the debtor's family.

8. *See, e.g., In re Kasden*, 181 B.R. 390 (Bankr. D.Minn.1995), *rev'd*, 186 B.R. 667 (D.Minn. 1995), *aff'd*, 84 F.3d 1104 (8th Cir.1996); *In re Thiesse*, 170 B.R. 147 (Bankr.D.Minn.1994), *re-*

issued both before[9] and after[10] it. It also expansively interprets the theory of the limited exceptions to the cutoff, in a way that does not track later decisions.[11] Finally, it is not entirely consistent with its own chosen rationale; its focus on an enforced "leaving by operation of law" certainly accounts for its debtor's physical abandonment, but it just does not logically speak to his failure to perform the simple ministerial act of filing the statutory notice.

There is, however, a deeper aspect of the decision that conclusively renders it infirm, especially in light of another ensuing development in the caselaw: it did not examine the basic nature of the asset in contention, or compare it to the type of asset to which the statute speaks on its face. *Joy*'s whole rationale is pinned on its unarticulated premise—that a secured right to payment granted as part of a marital property division equates to an interest in real property, or its proceeds.[12] In *Granse & Assoc., Inc. v. Kimm*, 529 N.W.2d 6 (Minn.App.1995), *rev. denied* (Minn. April 27, 1995), the Minnesota Court of Appeals rejected this construction—and it did so on facts that were the same in all material respects as those presented here.

In *Kimm*, the trial court had ruled that a post-dissolution right to payment in marital property division, secured by a lien against a former marital homestead, was vulnerable to sheriff's levy. The Court of Appeals affirmed, making two key points. The first was that the asset in question was a vested, non-contingent personal property right, and not an interest in real estate; as such it was subject to levy of execution. 529 N.W.2d at 8.[13] The obvious corollary to this holding was that a judgment debtor cannot use the homestead exemption laws to shelter such an asset from levy. The second was that a levy on such an asset is not an infringement on the homestead exemption rights of the ex-spouse who retains possession and title; a completed execution only substitutes the judgment creditor for the judgment debtor, as the payee whose rights would mature upon the occurrence of one of the contingencies specified in the dissolution decree. 529 N.W.2d at 9.

*Kimm* expressly rejects the notion that the homestead exemption statute affords any protection to the holder of a post-dissolution property division lien.[14] It is an on-point ruling by a state appellate court whose main charge is to interpret the laws of its forum. In the larger scheme of federalism, this Court must defer to its holding. To the extent, then, that *Joy* built its result on the assumption that a secured right to payment in a marital property division equates to an ownership interest in real estate protectible as homestead, *Kimm* overrides it entirely. *Joy* is simply no longer good law for bankruptcy cases in Minnesota.

The Debtor's alternative argument is that her right to payment from Robert is

---

*manded*, 61 F.3d 631 (8th Cir.1995); *In re Johnson*, 207 B.R. 878 (Bankr.D.Minn.1997).

**9.** *First Nat'l Bank of Mankato v. Wilson*, 234 Minn. 160, 47 N.W.2d 764 (1951).

**10.** *Muscala v. Wirtjes*, 310 N.W.2d 696 (Minn. 1981); *Joy v. Cooperative Oil Ass'n*, 360 N.W.2d 363 (Minn.App.1984) (*en banc*), *rev. denied* (Minn. March 6, 1985).

**11.** In *Joy v. Cooperative Oil Assn*, the Minnesota Court of Appeals declined to recognize a new exception in favor of a judgment debtor who had suffered a casualty loss of his homestead and vacated the property, but had not rebuilt and reoccupied it within the statutory year-long period. 360 N.W.2d at 365–366. In *Kasden*, the District Court similarly held the scope of the exceptions to those recognized in *Muscala, Wilson*, and their predecessors, 196 B.R. at 670–671, and the Eighth Circuit agreed. 84 F.3d at 1105.

**12.** Put another way, the *Joy* court did not draw any distinction between the case where a debtor retains legal title—with all that may entail by way of a claim to retake possession and occupancy in the future—and that where the legal title is extinguished, in exchange for other, non-possessory rights of economic value.

**13.** The opinion in *Kimm* does not qualify this observation with a recognition of the numerous protections from levy and execution given to various types of personalty under Minnesota statute. It did not really have to; there is no exemption statute in Minnesota that could construed to cover this sort of asset, at any stretch.

**14.** It did so over a strong dissent, 529 N.W.2d at 9–11, but under an express disagreement with the theory of that dissent, 529 N.W.2d at 9. It is not without significance that the Minnesota Supreme Court was petitioned to review the ruling, but declined to do so.

"proceeds" protected under MINN.STAT. § 510.07.[15] This argument, as the Trustee points out, is met by the rationale set forth in *In re Ehrich*, 110 B.R. 424 (Bankr.D.Minn. 1990): "proceeds" are cash, and cash only, and are protected by the statute only to the extent actually received in-hand by a debtor within one year of a "sale." *See also Johnson v. Brajkovich*, 229 Minn. 529, 40 N.W.2d 273, 275 (1950) (holding that cash proceeds from sale of homestead received in lump sum remained exempt during year after sale). The date of the "sale" in this case must be fixed as the date on which the dissolution decree was entered, January 31, 1996; that was when property rights effectively passed between the Muellers.[16] The Debtor had not received any payment from Robert as of the date of the evidentiary hearing, which fell literally on the last day of the year following the "sale." Absent early occurrence of one of the contingencies identified in the dissolution decree, the Debtor could not have forced payment from him before November 1, 1998. Because cash traceable to her interest in the marital dwelling was not to reach her within one year of the dissolution, and did not, her right to payment is not protectible as "proceeds" within the scope of MINN.STAT. § 510.07.[17]

The applicable law, then, supports only one result: the Debtor has no allowable exemption under Minnesota statute for her right to payment from Robert, the Trustee's objection must be sustained, and the asset will be administered by him.[18]

IT IS THEREFORE DETERMINED AND ORDERED:

1. The Trustee's objection is sustained.

2. The Debtor's claim of exemption in a right to payment from Robert D. Mueller, in the sum of $45,000.00, and the lien against the following described real estate:

> Lot 7, Block 2, Keya Paha Ranch, First Subdivision, Rice County, Minnesota, according to the recorded plat thereof on file and of record in the office of the County Recorder, Rice County, Minnesota.

which secures that right to payment, is disallowed.

**15.** Both parties assume that the exchange of the Debtor's undivided one-half interest as joint tenant for a secured right to payment was a sale within the meaning of the statute. This conclusion is not prescribed on the face of the statute, or necessarily self-evident, but it is an appropriate one. The purpose of the statute apparently is to temporarily shelter value derived from an exempt homestead for reinvestment into a new one. *O'Brien v. Johnson*, 148 N.W.2d at 361. To promote this goal, the legislature probably did not want any judicial quibbling as to the form of the transaction which converts a protectible interest from a tangible one capable of personal occupation. Any liquidation for consideration of a different form, whether an open-market sale or any other type of exchange, perforce terminates the main statutory protection for an ownership interest in real estate—but it should also trigger the more limited statutory protection for proceeds.

**16.** As noted in *Ehrich*, "sale" and "conveyance" may be distinct events under the statute. 110 B.R. at 428. Arguably, the "conveyance" here took place when the Debtor executed the quitclaim deed. The statute, however, triggers the

one-year window only with the event of "sale." Here, that event took place upon the entry of the decree, when the Muellers' property rights were permanently reconfigured.

**17.** The Debtor apparently incorporated her expectation of timely receiving the benefit of the property-division award into the structure of the financing for her new house. Her counsel argued that she might lose that house, her equity in it, and the benefit of her exemption to it, were she not to prevail on the Trustee's objection. Unfortunately, this prospect is irrelevant. The Debtor did not assign her right to payment to her vendors before she filed for bankruptcy; that right, then, entered the estate as an unencumbered asset, subject to the Trustee's administration to the extent not allowable to her as exempt.

**18.** The Debtor testified that, shortly before the evidentiary hearing, she had assigned the right to payment to her vendors via a written instrument. The Trustee announced his intention to invoke 11 U.S.C. § 549(a) to attack this transfer, and presumably will do so in light of the present ruling. Absent a consensual unraveling of the transfer, this is a matter for an adversary proceeding.