WILLIAM B. CLARK v. GEORGIA A. DEWEY.[1]

January 6, 1898.

Nos. 10,930—(155).

Homestead—Abandonment—Findings Sustained by Evidence—Sale on Execution.

> Held, that the evidence justified a finding to the effect that the plaintiff had lost his "homestead right" by abandonment.

Action in the district court for Hennepin county to set aside an execution sale to defendant of a certain city lot and dwelling house which plaintiff claimed as his homestead. His declaration of intent to claim the property as a homestead was duly recorded June 16, 1893. The other facts are stated in the opinion. The case was tried before Smith, J., without a jury, and the court made findings and ordered judgment in favor of defendant. From an order denying his motion for a new trial, plaintiff appealed. Affirmed.

F. B. Hart, for appellant.

Plaintiff took title to the homestead under the statute and not by the will of the decedent. His homestead right existed while his wife was living, although the title to the property rested in her. The family head may have a homestead right in property belonging to his wife. Eaton v. Robbins, 29 Minn. 327; Bergsma v. Dewey, 46 Minn. 359; McGowan v. Baldwin, 46 Minn. 477; Spalti v. Plumer, 56 Minn. 526; Kendall v. Powers, 96 Mo. 142; Davis v. Land, 88 Mo. 436; Moore v. Ivers, 83 Mo. 29; Stephens v. Hume, 25 Mo. 349; Keyte v. Peery, 25 Mo. App. 394; Reaume v. Chambers, 22 Mo. 36; Sanford v. Finkle, 112 Ill. 146; Milwaukee v. Ketterlin, 24 Ill. App. 188; Green v. Farrar, 53 Iowa, 426; Riehl v. Bingenheimer, 28 Wis. 84; Shepard v. Brewer, 65 Ill. 383; Clubb v. Wise, 64 Ill. 157.

While by his wife's death the title became vested in the plaintiff his prior homestead rights in the premises were not and could not be devested without an intentional abandonment on his part. In

[1] Reported in 73 N. W. 639.

this case there was no abandonment. Williams v. Moody, 35 Minn. 280; Brinkerhoff v. Everett, 38 Ill. 263; Shirack v. Shirack, 44 Kan. 653; Hixon v. George, 18 Kan. 253; Walters v. People, 21 Ill. 178; Rhorer v. Brockhage, 86 Mo. 544; Johnston v. Turner, 29 Ark. 280.

*Fred W. Reed* and *Brooks & Hendrix*, for respondent. ·

In Minnesota in order to be exempt as a homestead the property must be owned as well as occupied by the debtor. Occupancy and ownership must be concurrent. Sumner v. Sawtelle, 8 Minn. 272 (309); Rogers v. McCauley, 22 Minn. 384; Kelly v. Dill, 23 Minn. 435; Liebetrau v. Goodsell, 26 Minn. 417; Neumaier v. Vincent, 41 Minn. 481; Quehl v. Peterson, 47 Minn. 13. The homestead of a deceased wife is not exempt from execution for the husband's debts unless he occupy it as his homestead. Gowan v. Fountain, 50 Minn. 264.

Although the property of the deceased husband or wife passes to the survivor, the property does not vest in the survivor with any characteristics distinguishing it from property acquired from any other source. It does not become the homestead of the survivor until he or she makes it so by actual occupancy. The estate passes because it was the homestead of the deceased, but the homestead right of the deceased terminates upon his or her death and is not transmitted with the estate. Holbrook v. Wightman, 31 Minn. 168; Brame v. Craig, 12 Bush, 404; In re Moore, 57 Cal. 437; Smith v. Brackett, 36 Barb. 571. In the case at bar plaintiff never actually occupied the property as his homestead until long after the death of his wife, so that upon her death the lien of the previously docketed judgment immediately attached.

MITCHELL, J.

This action was brought to set aside the sale of a house and lot in Minneapolis, made February 3, 1896, on an execution issued on a judgment rendered and docketed August 20, 1890, against the plaintiff and in favor of the defendant.

The ground on which it was sought to have the sale set aside was that the property was the plaintiff's homestead, and therefore exempt. The property belonged to plaintiff's former wife, and

passed to him, under the statute of descents (G. S. 1894, § 4470), on her death without issue November 27, 1892. It had been occupied by plaintiff and his wife as their home and residence up to October 29, 1892 (about a month prior to her death), when they rented it, furnished, for six months, and went to the state of Wisconsin for a temporary purpose connected with the wife's health. It may, and probably must, be conceded that it continued their homestead up to the time of the wife's death; and the principal, if not the only, question in the case is whether the plaintiff had subsequently lost his homestead right by abandonment and ceasing to occupy the property as his home. The trial court found against the plaintiff on this question, and held as conclusions of law that the lien of defendant's judgment had attached, and that plaintiff should take nothing by the action. It is not assigned as error or urged that the findings of fact do not justify the conclusions of law, but the gist of all the assignments of error (that the court erred in making certain findings of fact and in refusing to make others), is that the findings were not justified by the evidence.

Actual occupancy, as distinguished from mere possession (which may be constructive), is the prominent idea associated with the word "homestead." Of course, the term "actual occupancy" must receive a reasonable construction, and is not to be understood as requiring constant personal presence, so as to make a man's residence his prison, or so that a temporary absence, enforced by some casualty, or for purposes of business or pleasure, would constitute a removal, ceasing to occupy, or an abandonment. Quehl v. Peterson, 47 Minn. 13, 49 N. W. 390.

But, even with this reasonable construction there must be actual and continued occupation of and residence upon the premises in order to constitute a homestead, except so far as such occupancy is expressly dispensed with by the statute. The statute provides that a "removal" from the premises shall not render the "homestead" subject to forced sale on execution, but that whenever the owner shall remove from the premises or cease to occupy the same as a homestead for more than six consecutive months, his homestead right shall cease on the expiration of six months, unless he file in the office of the register of deeds a notice designating his home-

stead, and stating that he claims it as such; but in no case shall his homestead right continue longer than five years from the filing of such notice, unless accompanied during some portion of that period by an actual occupancy of, and residence on, the premises. G. S. 1894, §§ 5528, 5529.

We cite these provisions of statute with reference to the effect of a claim of a homestead right filed by the plaintiff on June 16, 1893. A permanent removal from and abandonment of a homestead as a home and place of residence is not such a removal as this statute refers to and provides for. If a person removes from and ceases to occupy his homestead with intention permanently to abandon the same as a home or place of residence, his homestead right will not be preserved or continued by filing the statutory notice. As was said in Donaldson v. Lamprey, 29 Minn. 18, 21, 11 N. W. 119:

"What he may remove from is his homestead; what is to remain notwithstanding his removal is his homestead; and what is exempt is always, in the words of the statute, his 'homestead,' which means his legal home and dwelling place, although temporarily personally absent."

Upon an examination of the entire evidence, we are satisfied that it justified the conclusion that, after the death of his wife, the plaintiff ceased to occupy the premises as his home or place of abode, and removed therefrom without any intention of returning and occupying them as such. If so, this would constitute an abandonment. Williams v. Moody, 35 Minn. 280, 28 N. W. 510. Also, that he never resumed his occupancy until he came back with his second wife in May, 1896. If he had previously lost his homestead right by abandonment, his resumption of the occupancy of the premises in 1896 would not have any retroactive effect, but would merely give him a new right as of that date. Thompson, Homest. § 263.

We shall only refer to a few general features of the evidence. Most of the time from the fall of 1892 to the spring of 1896 the premises were rented to tenants. In most of these leases plaintiff reserved the use of a room in the second story. But the evidence tends very strongly to show that this was not done with any bona fide intention to use the room as a home, but was a mere ruse to

protect the property from his creditors. This is illustrated by what he said in a letter to the tenant soon after his wife's death. When about to go to Minneapolis on a temporary visit, he writes:

"In order now to make it [the house] my homestead, some legal formality must be observed. * * * I must also 'occupy' one room in the house (3 or 4 days will do), and agree with you to reserve for myself one room permanently. * * * To make the thing sure, would like to have my trunk sent directly up to 'my' house. * * * After I stay in the room a few days, and we understand that one room is reserved in the lease when I go away, as I shall, if you, unbeknown to me, see fit to use my room in my absence, I, 'not knowing it,' shall raise no objection."

The greater part of the time he was absent from the state, and when he was here he seems to have made his actual home elsewhere, but went through the form on each of his visits to sleep two or three nights in "his room," but this was evidently done to keep up appearances, and not with any bona fide intention of occupying it as his home. He admits that during this time he was anxious to sell the property. Without further discussing the evidence, we conclude that it justified the material findings. Whether or not it fully justified the findings as to some merely evidentiary facts is not important.

Order affirmed.