# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

---

No. 00-6097MN

---

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| Quentin B. Stenzel, | * | |
| | * | |
| Debtor. | * | |
| | * | |
| Peoples' State Bank of Wells, | * | Appeal from the United States |
| | * | Bankruptcy Court for the |
| Appellant, | * | District of Minnesota |
| | * | |
| v. | * | |
| | * | |
| Quentin B. Stenzel, | * | |
| | * | |
| Appellee. | * | |

---

Submitted: January 24, 2001
Filed: March 2, 2001

---

Before KOGER, Chief Judge, SCHERMER and SCOTT, Bankruptcy Judges

SCHERMER, Bankruptcy Judge

Peoples' State Bank of Wells, (the "Bank") appeals the bankruptcy court order allowing Quentin B. Stenzel (the "Debtor") to claim his mother's, Elsie M. Stenzel, (the "Mother") house and the acreage on which the house is situated (collectively the "Property") as his homestead. We have jurisdiction over this appeal from the final order of the bankruptcy court. See 28 U.S.C. § 158(b). For the reasons set forth below, we reverse.

ISSUE

The issue on appeal is whether the Debtor "occupied" the Property, entitling him to exempt it as his homestead pursuant to M.S.A. §§ 501.01 and 510.02, when he did not reside on the Property and did not farm the land, but raised hogs in a barn prior to filing for bankruptcy relief. We conclude that the Debtor did not "occupy" the Property and therefore cannot claim it as his exempt homestead pursuant to Minnesota law.

BACKGROUND

For thirty-seven years, the Debtor and his wife (the "Wife") have lived on a five acre parcel they own in the City of Wells in rural Freeborn County, Minnesota (the "Domiciled Parcel"). They originally received their interest in the Domiciled Parcel from the Debtor's grandparent. The Debtors claim of a homestead exemption in the Domiciled Parcel is not contested.

The Mother has lived on the Property since she acquired it with her late husband sixty-two years ago. After owning the Property for fifty-one years, the Debtor's parents signed a warranty deed conveying a life estate to themselves and remainder interests to each of their three children. This deed was recorded four years later, and two years after the Debtor's father's death. A county highway separates the Property and the Domiciled Parcel. The Property consists of approximately 148 acres of tillable land, and a five to six acre building site which includes: a hog house; the Mother's house; a machine shed; a granary; two farrowing barns; a large barn; a corn crib; and a couple of storage houses.

For approximately twenty-three years, the Debtor farmed the tillable land on the Property with his father. The Debtor then farmed this land alone for an additional three years. After the Debtor ceased farming the land on the Property, the Mother rented the tillable land to J.L. Miller, a third-party, for three years. For the next five years, the Mother rented the tillable land to Albert Schuster, another third-party. The Mother then rented the land again to J.L. Miller for three years. On occasion, the Debtor worked for J.L. Miller, farming the land.

The Debtor has engaged in raising hogs on the Property since he was nine or ten years of age. His hog operation involved use of the Domiciled Parcel and the barns on the Property. The Debtor used the

2

barns with the Mother's permission. He paid for water, supplies, electricity and paid insurance for the hogs on the Property.

On September, 20, 1999, the Debtor filed for chapter 7 bankruptcy relief. Within the year preceding his filing date, the Debtor liquidated the balance of his livestock. On the filing date, the Debtor was not engaged in any type of farming activity or hog operations on the Property. At the meeting of creditors, the Debtor testified that he did not have an interest in any real estate except for the Domiciled Parcel. He stated that his homestead was on the Domiciled Parcel and that his farming operation took place mostly on the Domiciled Parcel with some operations on the Property. The Debtor received a discharge two months after his bankruptcy filing.

After the discharge, the Bank and the trustee (the "Trustee") notified the Debtor of their discovery of the Debtor's one-third remainder interest in the Property. The Debtor then amended his bankruptcy schedules and claimed homestead exemptions for both the Domiciled Parcel and the Property. The Bank and the Trustee objected to the Debtor's claimed exemptions.

The Debtor filed a response stating that he intended to engage in hog operations and farm the tillable land on the Property in the future. In his deposition of July 2000, the Debtor stated that he was cleaning and disinfecting the hog barns on the Property at the time of filing. Since the deposition, the Debtor has been conducting the hog operation on the Property and not on the Domiciled Parcel. The Debtor claimed that he thought that he would continue to farm the Property after his father's death and that he would inherit the Property with his two sisters. In her deposition, the Mother stated that she thought that the Debtor would go back to farming the land on the Property and that her three children would share full ownership of the Property when she passed away.

All parties submitted motions for summary judgment. In affidavits of the Debtor and the Mother submitted in support of the Debtor's motion for summary judgment, each stated that the Debtor and the Wife routinely assist the Mother in cleaning and maintaining her house and getting her to doctors' appointments.

The bankruptcy court found that the Debtor "owned" the Property under the meaning of that term in M.S.A. § 510.01. Further, the court held that the Debtor established that the Domiciled Parcel and the Property were contiguous under Minnesota Law and therefore constituted a single unit for purposes of the

homestead exemption. The court then held that occupancy was a fact issue and that the Debtor met his burden of proving occupancy because he had a longstanding presence on the Property. According to the court, whether the Debtor had a right to possession that was legally enforceable against a life tenant was irrelevant because, as a matter of fact, the Debtor used the Property. All 155 acres of the Property were exempt as the Debtor's homestead pursuant to M.S.A. §§ 510.01 and 510.02.[1]

## STANDARD OF REVIEW

The facts are not in dispute. This Court reviews *de novo* the bankruptcy court's legal conclusions, and reviews for clear error its findings of fact. Fed. R. Bankr. P. 8013. Martin v. Cox (In re Martin), 140 F.3d 806, 807 (8th Cir. 1998); Gourley v. Usery (In re Usery), 123 F.3d 1089, 1093 (8th Cir. 1997). A federal court is bound by decisions of the highest state court when deciding a question of substantive law. Bass v. General Motors Corp., 150 F.3d 842, 847 (8th Cir. 1998). The Bankruptcy Appellate Panel reviews the bankruptcy court's determinations of state law de novo. In re Simmonds, 240 B.R. 897 ( B.A.P. 8th Cir. 1999).

## DISCUSSION

According to 11 U.S.C. § 522(b)(2)(A), a debtor may exempt from the bankruptcy estate any property which is exempt under applicable state or local law on the date of filing of the petition. The party objecting to the debtor's claimed exemption has the burden of proving that the debtor is not entitled to the exemption. In re Curry, 160 B.R. 813, 817 (Bankr. D. Minn. 1993). Although the homestead provision is to be liberally construed, the interpretation is not to be strained. Ross v. Simser, 258 N.W. 582, 583 (1935); Vickery v. First Bank of LaCrosse, 368 N.W.2d 758, 762 (Minn. Ct. App. 1985).

---

[1] Pursuant to Section 510.02 of the Minnesota Statutes, "[t]he homestead may include any quantity of land not exceeding 160 acres, and not included in the laid out or platted portion of any city." Because the Debtor had already claimed an exemption for the five acres of the Domiciled Parcel, he would only be able to exempt up to an additional 155 acres in property as his homestead. The Debtor only requests an exemption for the Property to the extent that it, together with the exemption for the Domiciled Parcel, total the 160 acre statutory limit.

Section 510.01 of the Minnesota Revised Statutes defines "homestead" for purposes of the Minnesota homestead exemption. That section states:

> The house owned and occupied by the debtor as the debtor's dwelling place, together with land upon which it is situated to the amount of area and value hereinafter limited and defined shall constitute the homestead of such debtor and the debtor's family, and be exempt from seizure or sale under legal process on account of any debt not lawfully charged thereon in writing.

A debtor must "own and occupy" a home upon the land to qualify for a homestead exemption under M.S.A. § 510.01. A homestead is defined as a person's legal home and dwelling place. Clark v. Dewey, 3 N.W. 639 (Minn. 1898). As long as the debtor actually resides on the parcel, a homestead may be used for purposes other than as a dwelling. In re Lockey's Estate, 128 N.W. 833, 834 (Minn. 1910). The term "occupancy" in the homestead exemption statute refers to the debtor's actual occupancy. Quehl v. Peterson, 49 N.W. 390, 391 (Minn. 1891). To fulfill the actual occupancy requirement, a debtor does not need to have a constant physical presence, so as to make a man's residence his prison. In re Smoinikar, 200 B.R. 640, 644 (Bankr. D. Minn. 1996). Actual occupancy, however, requires more than an intent to occupy the property in the future.[2] Id (quoting Clark v. Dewey, 71 Minn. 108, 73 N.W. 639, 639-40 (1898)).

### Deciding Whether the "Occupy" Element of M.S.A. § 510.01 is Satisfied is a Legal, not Factual, Determination.

The Bank argued that the bankruptcy court improperly decided that occupancy under M.S.A. § 510.01 may be satisfied on a factual, instead of legal, basis. The bankruptcy court noted that whether or not the Debtor had a legal right to occupy the property as of filing, the Debtor did maintain a physical presence in an income-producing use of the property with the permission of the life tenant as a matter of fact. According to the bankruptcy court, that was enough to prove occupancy under M.S.A. § 510.01.

---

[2] The bankruptcy court listed the Debtor's intent to occupy the Property in the future as a factor supporting the finding that the Debtor satisfied the "occupancy" element of M.S.A. § 510.01. According to the Minnesota Supreme Court, intent is not enough to support a holding of actual occupancy. See Smoinikar, 200 B.R. at 644 (citing Muscala v. Wirtjes, 310 N.W.2d 696, 698 (Minn. 1981)).

We disagree with the bankruptcy court and hold that occupancy under M.S.A. § 510.01 requires a determination of a legal, not merely factual, right of occupancy and possession. Minnesota law requires a legal right to occupancy and possession of a parcel of real estate for which a homestead exemption is claimed under M.S.A. § 510.01. See Kelly v. Baker, 10 Minn. 154 (Minn. 1865) (allowing a debtor to exempt a two story building as his homestead where part of the building was used as his dwelling and part was rented by a third-party for commercial purposes because the debtor had both an ownership interest and the exclusive right to occupy and possess the building in its entirety if he so chose); In re Emerson, 60 N.W. 23 (Minn. 1894)(holding that the character of the ownership does not matter as long as the debtor has a legal right of possession and occupancy to the property); Fidelity Philadelphia Trust Co. v. Brown, 232 N.W. 740 (Minn. 1930) (finding that the debtor was allowed to exempt a hotel as his homestead where the debtor had the exclusive right to occupy the hotel). The bankruptcy court's conclusion that M.S.A. § 510.01 requires only a factual, not legal, right to occupancy was incorrect.

### The Debtor did not Occupy the Property

The Debtor did not meet his burden of proof that he had a legally enforceable right to occupy the Property. The Debtor failed to prove that he had a legally valid present possessory interest in the Property and that he resided on the Property on the filing date.

There is no evidence of a contract between the Debtor and his mother giving the Debtor a legal right to possess and occupy the Property. As a life tenant, the Mother has the right to exclusive use, possession, and occupancy of the Property. See In re Ehrich, 100 B.R. 424, 426 (Bankr. D. Minn. 1990). Without a contract from the Mother granting the Debtor the right to be present on and use the Property, the Debtor is on the Mother's land at her will. At any time during her life, the Mother could change her course of dealings with the Debtor and prohibit him from using, possessing, and occupying her Property. The Mother made no legal agreement to convey any portion of her occupancy rights to the Debtor.

If the Mother had filed for bankruptcy relief on the same day as her son, she would have had a right to claim the Property exempt as her homestead pursuant to M.S.A. §§ 510.01 and 510.02. She clearly has an ownership right in the Property due to her life estate and could prove that she "occupies" the Property as its sole resident.

6

The purpose of enacting M.S.A. § 510.01 was to help preserve the homestead for people like the Mother, not the Debtor. As the Minnesota Supreme Court stated in Denzer v. Prendergast, 126 N.W.2d 440, 444 (Minn. 1964), the test to determine whether a house is "owned and occupied" under the Minnesota homestead statute, is whether such ownership and occupancy affords a community connection that is significant enough to give reason to believe that the preservation of that connection will, in the long run, make the Debtor and his family better able to fulfill their social obligation to be self-sustaining. The homestead exemption is designed to protect a debtor's home from creditors. Application of Jensen, 414 N.W.2d 742, 745 (Minn.App. 1987). The intent of the homestead exemption is to secure a debtor's home against uncertainties and misfortunes of life and to preserve the home as a dwelling for the debtor and his or her family. In re Mueller, 215 B.R. 1018, 1023 (B.A.P. 8th Cir. 1998), See also In re Johnson, 207 B.R. 878, 881, n.6, citing Denzer, 126 N.W.2d at 444 (Bankr. D. Minn. 1997) (prevention of destitution and dependency of families and promotion of independence over generations were the purposes for enacting the Minnesota homestead exemption statute). The Mother is the one who depends on the house and land to ensure her independence and self-support.

The Debtor relies on Denzer and Brixius v. Reimringer, 112 N.W.2d 273 (Minn. 1908), to support his argument that he should be able to exempt the Property as his homestead. Both cases are factually distinct from the case at bar. In Denzer, the debtor lived in a house on the property he claimed as exempt. The court in Brixius considered two pieces of property that were connected at the corner to be one parcel even though a road ran between the two pieces of property. The two pieces of property operated as one parcel and the debtor had exclusive ownership and occupancy rights to both properties. The Debtor cannot show that the Domiciled Parcel and the Property operate as one and he does not have exclusive ownership or occupancy rights to both of the parcels.

The Bank argues that the bankruptcy court improperly held that the facts that the Debtor did not live anywhere on the Property and was not farming the land on the date of filing were irrelevant. We agree with the Bank. A debtor must live on the property at the time of his bankruptcy filing to claim such property as his exempt homestead. Smoinikar, 200 B.R. at 642 -43. The Debtor could not claim the Property as his exempt homestead.

CONCLUSION

The bankruptcy court incorrectly held that the determination of whether the Debtor "occupied" the Property for the purposes of M.S.A. § 510.01 could be determined based on the facts, instead of solely based on a legal right to possession or occupancy. The bankruptcy court erred by concluding that the Debtor occupied the Property pursuant to M.S.A. § 510.01 and could therefore claim the Property as his exempt homestead. For the foregoing reasons, the judgment of the bankruptcy court is reversed.

A true copy.

Attest:

CLERK, U.S. BANKRUPTCY APPELLATE PANEL FOR THE
EIGHTH CIRCUIT