# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-2003

_____

In Re:  Quentin B. Stenzel,

              Debtor.

-----------------------------------------------

Peoples' State Bank of Wells,

              Appellee,

        v.

Quentin B. Stenzel,

              Appellant.

Appeal from the United States
Bankruptcy Appellate Panel
for the Eighth Circuit

_____

Submitted:  February 14, 2002

Filed:  August 30, 2002

_____

Before LOKEN and RILEY, Circuit Judges, and KORNMANN,[*] District Judge.

_____

LOKEN, Circuit Judge.

When Minnesota farmer Quentin B. Stenzel petitioned for Chapter 7 bankruptcy relief, he claimed a homestead exemption for the five acres he owned and occupied as his residence.  Creditor Peoples' State Bank of Wells discovered that

---

[*]The HONORABLE CHARLES B. KORNMANN, United States District Judge for the District of South Dakota, sitting by designation.

Stenzel also owned an undivided one-third remainder interest in the nearby parcel where his mother resided as a life tenant. Stenzel then amended his bankruptcy schedules to claim an additional homestead exemption for 155 acres of that parcel. The Bank objected to the additional 155-acre claim. The Bankruptcy Court allowed the amended claim, concluding that Stenzel owned and occupied the 155 acres for purposes of the homestead exemption under Minnesota law. The Bankruptcy Appellate Panel (BAP) reversed, and Stenzel appeals. We have jurisdiction over a final order denying a bankruptcy exemption. In re Huebner, 986 F.2d 1222, 1223-24 (8th Cir. 1993). We reverse and remand.

## I.

Stenzel grew up on the 155-acre parcel[1] and began helping his father farm the property when he was ten years old. Stenzel bought the adjacent five-acre parcel from his grandparents when he married in 1963. He and his wife have lived there ever since. The five-acre parcel lies across county highway 29 from the 155-acre parcel. Stenzel's father quit farming the larger parcel in the mid-1980's. Stenzel farmed the tillable acreage until 1989, when he quit planting crops because of operating losses. Unknown to Stenzel, his parents conveyed undivided one-third remainder interests in the 155-acre parcel to Stenzel and his two sisters in 1990, with their mother retaining a life estate in the property.

Stenzel conducted a hog farming operation until he sold his livestock shortly before filing the Chapter 7 petition. He used outbuildings on the five-acre parcel for this purpose, as well as barns and farrowing sheds on the 155-acre parcel. He did not pay rent to his mother for use of those buildings, but he paid the water and electric bills and was responsible for their upkeep. After 1989, his mother cash rented the

---

[1]The exact size of this parcel has not been determined. Because the homestead exemption is limited to 160 acres, we will call it the 155-acre parcel.

148 acres of tillable land and used the rental income to pay taxes and living expenses. Although Stenzel stopped farming before filing the Chapter 7 petition, he has resumed his hog farming operation and intends to resume farming the tillable acreage when crop prices improve. His mother expects Stenzel to farm the 155-acre parcel after her children inherit it.

A debtor may exempt from his bankruptcy estate property that is exempt under state law on the date the petition is filed. See 11 U.S.C. § 522(b)(2)(A). The party objecting to a claimed exemption, here the Bank, has the burden of proving the debtor is *not* entitled to the exemption. See Bankruptcy Rule 4003(c). In this case, the parties agree that Stenzel may exempt his ownership interest in the five-acre parcel. The issue is whether the 155-acre parcel is also included in his homestead exemption under Minnesota law so that his one-third remainder interest in that parcel is exempt from his bankruptcy estate.

## II.

Subject to exceptions not relevant here, Minnesota law exempts "[t]he house owned and occupied by a debtor as the debtor's dwelling place, together with the land upon which it is situated [from] seizure or sale under legal process on account of any debt." Minn. Stat. § 510.01. For agricultural property, this homestead exemption is limited to 160 acres. See § 510.02. The ownership requirement for a homestead exemption is liberally defined. "Any interest in the land, whether legal or equitable, shall constitute ownership, within the meaning of this chapter." Minn. Stat. § 510.04. Here, the parties agree Stenzel's undivided one-third remainder interest constituted a present ownership interest in the 155-acre parcel. The issue is whether Stenzel *occupied* the 155-acre parcel within the meaning of Minn. Stat. § 510.01 when he petitioned for Chapter 7 relief.

The Bank argues that Stenzel did not occupy the 155-acre parcel as a matter of law because his remainder interest conferred no present right of possession, and the homestead exemption requires "a concurrence of ownership and occupancy, the former sustaining the latter." Kaser v. Haas, 7 N.W. 824, 825 (Minn. 1881). We agree with Stenzel the Minnesota Supreme Court rejected this contention in Denzer v. Prendergast, 126 N.W.2d 440, 442-43 (Minn. 1964). In Denzer, the debtor, like Stenzel, owned a residual interest in a family farm that was subject to his mother's life estate. Though this future interest did not entitle him to possession or occupancy while the life tenant was alive, the debtor in fact lived with his mother. The Court concluded that an oral agreement between the debtor and his mother provided a sufficient right of occupancy, specifically rejecting the above-quoted passage from Kaser and focusing instead on "whether the ownership and occupancy affords a community connection of such significance as to give reason to believe that the preservation of that connection will in the long run make the debtor and his family better able to fulfill their social obligation to be self-sustaining." 126 N.W.2d at 444.

Stenzel argues that any agricultural property in which the debtor has an ownership interest and actual possession qualifies for the Minnesota homestead exemption. But that states the exemption too broadly, because it disregards the *homestead* basis for the exemption. The statute exempts "[t]he house owned and occupied by a debtor . . . together with the land *upon which it is situated.*" The italicized language precludes the exemption of land that is not contiguous with the land on which the debtor's home is located, whether or not the debtor has an ownership interest in the non-contiguous parcel and occupies it for farming. See Michels v. Kozitza, 610 N.W.2d 368, 371 (Minn. App. 2000).

As we read the numerous cases, Minnesota courts have been pragmatic in determining the extent to which contiguous farmland qualifies for the homestead exemption, seeking to decide each case in a manner consistent with the purposes underlying the exemption. For example, though "a debtor may claim only one

-4-

homestead," <u>Hommerding v. Travelers Ins. Co.</u>, 393 N.W.2d 389, 391 (Minn. App. 1986), exempt land may "consist of two or more separate descriptions, or tracts, of land, provided the same are so situated that they may be occupied and cultivated as one body of land." <u>Brixius v. Reimringer</u>, 112 N.W. 273, 273 (Minn. 1907). Moreover, it is settled that two persons may each claim a homestead exemption in the same land, provided they each reside on the land and have the requisite ownership interest. <u>See</u> <u>Eberhart v. Nat'l Citizens' Bank</u>, 214 N.W. 793, 794 (Minn. 1927) (two brothers occupying separate portions of one farmhouse); <u>Matter of Guardianship of Huesman</u>, 381 N.W.2d 73, 77 (Minn. App. 1986) (two brothers having undivided one-half interests in a farm as tenants-in-common). Similarly, an owner who lives in a building may exempt the entire building even if he leases portions of the premises to others. <u>See, e.g.</u>, <u>Winland v. Holcomb</u>, 3 N.W. 341 (Minn. 1879).

In this case, the 155-acre and the five-acre parcels are contiguous, so they are eligible for a combined homestead exemption under <u>Brixius</u>. If Stenzel had purchased the contiguous 155-acre parcel from his parents with the intent of expanding his five-acre family farm, we have no doubt the entire 160 acres would qualify for the homestead exemption. Likewise, if Stenzel's parents had built a second house on the larger parcel for Stenzel's family and conveyed a one-half ownership interest to him, both Stenzel and his mother could claim the entire parcel as a homestead exemption. Instead, Stenzel has only a future ownership interest in the 155-acre parcel; that parcel has historically been his parents' homestead, not part of his five-acre homestead; and Stenzel uses a portion of that parcel only for farming, with the permission of his mother, the life tenant. In these circumstances, did he occupy the 155-acre parcel in such a manner that it became, in the words of the statute, "land upon which [*his* dwelling place] is situated"? This question is not answered by <u>Denzer</u>, where the debtor lived on a single farm with his mother, nor by <u>Brixius</u>, where only the debtor resided on one of two contiguous parcels of farmland that were found to comprise a single farm.

Suppose two farmers live across the road from each other. The older has no children and wishes to quit farming but remain on his property. The two farmers enter into an agreement whereby the older conveys the remainder interest in his homestead to his young neighbor, retaining a life estate, and the neighbor promises to farm the property for their mutual benefit until the life tenant dies. At least if the younger farmer intends by this arrangement to create a single farm out of the two properties, the agreement establishes an ownership interest, actual present occupancy, and the significant "community connection" referred to in <u>Denzer</u>. That is sufficient to entitle the younger farmer to a homestead exemption in both properties, assuming they do not exceed the 160-acre limitation.

In contrast to the above hypothetical, which included a formal agreement between unrelated neighbors, the BAP concluded in this case that Stenzel's homestead exemption does not include the 155-acre parcel as a matter of law because he had no "legally valid present possessory interest" in that parcel. We reject this as the controlling legal standard, at least in family farm situations. The debtor in <u>Denzer</u> had no "legally valid" right of occupancy other than "an oral agreement . . . for the support and maintenance of the life tenant," his mother. 126 N.W.2d at 441. Here, Stenzel had express permission from his mother to occupy the 155-acre parcel for farming purposes. In this kind of family relationship, is that any less of a "legally valid" right of occupancy than the oral agreement in <u>Denzer</u>? We think not, at least not as a matter of law. The Bankruptcy Court found that Stenzel, like the debtor in <u>Denzer</u>, occupied a portion of the 155-acre parcel with the permission of the life tenant. If the BAP concluded this finding was inadequate because it is necessary to determine whether Stenzel and his mother had a "legally valid" contractual relationship, express or implied, it should have remanded, not decided the issue as a matter of law.

In our view, the relevant difference between this case and <u>Denzer</u>, as the BAP recognized later in its opinion, is that Stenzel did not *live with* his mother on the 155-

acre parcel. But the BAP's analysis failed to consider that two persons may claim a homestead exemption for the same property. No doubt Stenzel's mother as life tenant could claim a homestead exemption on the 155-acre parcel. But Stenzel is not claiming that exemption, which would run afoul of the principle that a debtor may have but one homestead. Rather, Stenzel claims that his common farming of the two parcels permits him to add the 155-acre parcel to *his* homestead exemption.

We agree with the Bankruptcy Court that this is a question of fact, not law. But the relevant question of fact is one the Bankruptcy Court did not answer -- whether the 155-acre parcel is part of the "land upon which [*Stenzel's* house] is situated." To answer that question, the Minnesota cases require a fact-based determination of whether Stenzel used the 155-acre parcel for farming purposes in such a way that the two parcels were "occupied and cultivated as one piece or parcel of land, on some part of which is located the [debtor's] residence." Brixius, 112 N.W. at 273; see Denzer, 126 N.W.2d at 444-45. The Bankruptcy Court looked at many of the relevant factors in finding that Stenzel occupied the 155-acre parcel with the life tenant's permission. But the court did not make the crucial finding that his limited occupancy and his future ownership interest were enough to make the 155-acre parcel part of the "land upon which [his house] is situated." In addition, the Bankruptcy Court erroneously concluded that Stenzel's ignorance of his ownership interest in the 155-acre parcel is irrelevant. While this fact is hardly dispositive, a debtor's intent is relevant in determining whether he has occupied two contiguous parcels as a single farm. Cf. Clark v. Dewey, 73 N.W. 639, 640 (Minn. 1898) (debtor must have "bona fide intention of occupying [the property] as his home"). For example, a farmer who leases additional acreage each crop season would doubtless not add to his homestead exemption the one year he happened to rent a parcel immediately across the road from his homestead.

For the foregoing reasons, the judgment of the Bankruptcy Appellate Panel is reversed and the case is remanded with instructions to remand to the Bankruptcy Court for further proceedings not inconsistent with this opinion.

KORNMANN, District Judge, concurring.

I concur in the result of this case. I agree that one of the issues is whether Mr. Stenzel *occupied* any portion of the 155 acres in question. As the majority opinion notes, the exact size of this parcel has not been determined. In accordance with the majority opinion, I will also call it the 155-acre parcel. On remand, the exact size of this parcel should be determined.

A separate parcel has been identified as a five acre parcel. I believe that is incorrect. It may become important because a debtor in Minnesota may not claim more than 160 acres as a homestead. The legal description on the deed conveying the small parcel where Stenzel's home is located is: "31 rods off from the West side of the South half of the Northwest Quarter of Section 31 . . ." No mention is made in the deed of any number of acres. Nothing was platted. This, of course, is not a metes and bounds description. If you multiply 31 rods (i.e. 511.5 feet) by 1,320 feet (the length of the South half of the Northwest Quarter) you have 675,180 square feet. Since there are 43,560 square feet in one acre the parcel is obviously, as a simple matter of mathematics, 15.5 acres, not five acres. The bankruptcy court and the parties failed to look at or explain this matter of mathematics. Thus, we could not be talking about combining the 155 acres with a five acre parcel. Subtracting 15.5 acres from 160 acres leaves only 144.5 acres possibly available from the possible 155 acres as part of Stenzel's entire homestead.

I believe we should not state that Stenzel "uses a portion" of the 155-acre parcel for farming. Apparently, sometime prior to and at the time of the bankruptcy filing, Mr. Stenzel was using *no portion* of the 155-acre parcel for anything. The 148

tillable acres had been leased by Stenzel's mother to a third party; certainly Stenzel had no right to be interfering with the tillable acres and the leasehold rights. As a remainderman, Mr. Stenzel would have had no right to interfere with the use by the life tenant as well (unless, of course, waste was being committed). Mr. Stenzel had not farmed the tillable acres or used them for anything else since the late 1980's. Stenzel had ceased using, prior to filing for bankruptcy, even the small area (part of the 155-acre parcel) on which sheds had been used by Stenzel earlier to raise hogs. I agree with the conclusion of the BAP that Stenzel had no "legally valid present possessory interest" in the 155-acre parcel. Nevertheless, as the majority opinion states, this is apparently not the controlling legal standard under Minnesota law.

I do not think we should state that Stenzel "had express permission from his mother to occupy the 155-acre parcel for farming purposes." Stenzel's mother had already executed and recorded a deed reserving only a life estate to herself and naming Stenzel and his sisters as the "remainder-people". The two sisters held 2/3 of the total remainder interest. For all we know, the two sisters did not want to ultimately have Mr. Stenzel farming the land. At a minimum, all these issues are factual issues to be determined on remand. I frankly do not understand how Stenzel's mother could legally grant permission for Mr. Stenzel to occupy or use any of the tillable acres after she had leased that land to a third party who was paying the rent to her and after she had conveyed a remainder interest to three people. There is nothing in the record as to any oral or written agreement between Stenzel and his mother. I do not understand how the bankruptcy court could possibly have found that Stenzel "occupied" the tillable acres "with the permission of the life tenant." I agree with the majority opinion that the bankruptcy court did not answer the question whether the 155-acre parcel is part of the "land upon which [*Stenzel's* house] is situated" and the question should first be addressed there. I also agree with the majority opinion that the bankruptcy court erroneously came to the conclusion that Stenzel's ignorance of his 1/3 remainder ownership interest in the 155-acre parcel is irrelevant. I do not agree with language in the majority opinion that this fact is

"hardly dispositive." I believe it may well be entirely dispositive. Minnesota law is clear that a debtor's intent is relevant and that there must be a bona fide intention of occupying the 155-acre parcel as part of the homestead. *See* Clark v. Dewey, 73 NW 639, 640 (Minn. 1898). I have great difficulty understanding how Stenzel, a person who was not using or living on the 155-acre parcel when he filed for bankruptcy, a person who apparently had no knowledge of any remainder interest that he or his sisters had in the parcel, and a person who apparently thought he had no ownership or occupancy interest of any kind, can claim retroactively (after a creditor has discovered the interest), that he did have a homestead covering such real estate and so intended. If anything, it seems to me that Mr. Stenzel intended to not have any interest of any kind in the 155-acre parcel. Otherwise, he would have reported it as an asset in his bankruptcy filing and he did not do so. I do not believe that, in this context, intent can exist in the presence of ignorance.

I am troubled by some of the concepts employed by the bankruptcy court. Reference was made to Stenzel's "intentions" for the land. Reference is made to a possible "resumption and continuation." I fail to understand how Mr. Stenzel could have intended any future use of the 155-acre parcel when he obviously would have known the tillable acres were leased to a third party and Stenzel had no information about his 1/3 remainder interest. I agree with the remand since the bankruptcy court should determine in the first instance exactly what Stenzel's intentions were and the factual basis for any such intentions. I would be surprised if a person may legally claim a homestead interest based upon some aspiration (however unrealistic it may be) to later (on some unknown date) occupy and use a parcel. I have not heard of any legal concept that homestead rights as of the date of filing may be based on "future intentions", "wishes", "hopes" or "aspirations." The bankruptcy court found that it was "undisputed" that Stenzel was "even then (I assume the bankruptcy court was referring to the time of filing) maintaining its physical integrity (I do not understand this at all as to Mr. Stenzel or as to any of this real estate) for the resumption of his past patterns of usage as soon as it was economically feasible . . ." These are, very

frankly, legal concepts that I have not previously encountered. If Mr. Stenzel hoped to sometime resume the occupancy, this would seem to me to rule out "present occupancy." I do not understand what standards could be used to judge whether and when future use and occupancy might become "economically feasible", especially given the dire economic conditions farmers and ranchers now face in our country.

This is a difficult case. Our task as federal judges, whether Article III or bankruptcy judges, is made difficult by what the majority opinion in a kindly manner refers to as a "pragmatic" approach by Minnesota state courts in determining the extent to which contiguous farmland qualifies for a homestead exemption.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.